432 S.E.2d 27

**WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES, Appellant,**

v.

**Warren HESS, John Mellinger and Vicki Britner, Appellees.**

**No. 21278.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 19, 1993.

Decided March 16, 1993.

Darrell V. McGraw, Jr., Atty. Gen., Charlene A. Vaughan, Asst. Atty. Gen., Charleston, for appellant.

James M. Haviland, Crandall, Pyles & Haviland, Charleston, for appellees.

MILLER, Justice:

The West Virginia Department of Health and Human Resources (Department) appeals a final order of the Circuit Court of Kanawha County, dated March 14, 1992, dismissing its appeal from an administrative decision of the West Virginia Education and State Employees Grievance Board (Board). The circuit court dismissed the case because: (1) the Department failed to appeal the administrative decision within the time frame prescribed by W.Va.Code, 29–6A–7, and (2) the Department failed to pay the circuit court's filing fee "in advance," as required by W.Va.Code, 59–1–11 (1990). We find that the circuit court erred. Moreover, because the Department did not have a full and fair opportunity to rebut the ground on which the grievance was sustained, we reverse and remand the case for an evidentiary hearing on whether the Department discriminated against the appellees by showing "favoritism" to another employee of the Department.[1]

## I.

The appellees, Warren Hess, John Mellinger, and Vicki Britner, are all employed by the Department as probation officers and are classified under the civil service system as Social Service Workers III (SSW III).[2] In May of 1990, the appellees filed separate grievances, all of which alleged that they perform the same type of work as probation officers employed by the West Virginia Supreme Court of Appeals and that they should, therefore, receive a comparable salary.[3]

---

1. The Department further assigns as error the trial court's clarification of the hearing examiner's order dated June 13, 1991. Because we are remanding the case for an evidentiary hearing, we need not address this issue.

2. Mr. Hess is employed in Berkeley County, Mr. Mellinger in Jackson County, and Ms. Britner in Braxton County.

3. Mr. Mellinger and Ms. Britner filed their grievances on May 15, 1990, and Mr. Hess on May 22, 1990. The appellees consolidated their actions at the Level III grievance hearing.

At the Level III grievance hearing,[4] the appellees raised for the first time the additional allegation that the Department showed favoritism "toward its probation officer, Michael McLaughlin, who was being paid $6,000 more per year though his tenure as a probation officer had been shorter than any of the appellees." The Commissioner of the Department ruled at the Level III hearing that the appellees were not entitled to pay comparable to that of the probation officers employed by the West Virginia Supreme Court of Appeals. This decision did not address the issue of whether the Department had practiced "favoritism" in violation of W.Va.Code, 29–6A–2(h).[5]

The parties agreed to have the Level IV hearing examiner render a decision based upon the record of the Level III hearing. The hearing examiner, like the Commissioner at the Level III hearing, ruled that the appellees were not entitled to pay comparable to that of probation officers employed by the West Virginia Supreme Court of Appeals. Although the hearing examiner recognized that the issue of favoritism had not been raised in any of the original grievances, she felt that the issue was properly before her pursuant to W.Va. Code, 29–6A–3(j).

The hearing examiner determined that the appellees had made a *prima facie* case of favoritism. Moreover, because the Department had not articulated any justification for the differences between Mr. McLaughlin's salary and that of the appellees, the hearing examiner ruled that it had failed to rebut the presumption of favoritism. Accordingly, the hearing examiner ordered the Department to "equalize the salaries of grievants and Mr. McLaughlin so as to erase any illegal inequality."

The Department then appealed the administrative decision to the Circuit Court of Kanawha County.[6] In its appeal, the Department argued that it was not on notice that favoritism was an issue in the case. Thus, for the first time and at its first opportunity, the Department articulated the reasons why Mr. McLaughlin's salary was higher than that of the three appellees.[7] In response, the appellees filed a motion to dismiss the appeal on two grounds. The first was based upon the Department's failure to file its appeal with the circuit court within thirty days of receipt of the hearing examiner's decision as required by W.Va.Code, 29–6A–7. The second ground asserted that the Department had failed to pay the filing fee "in advance" as required by W.Va.Code, 59–1–11 (1990).

On March 4, 1992, the circuit court issued an order granting the appellees' motion to dismiss and directing the Department to comply with the Board's decision. On May 14, 1992, the circuit court issued another order clarifying the decision of the hearing examiner. The circuit court said

4. The Level III hearing is held before the "chief administrator of the grievant's employing department, board, commission or agency." W.Va.Code, 29–6A–4(c).

5. W.Va.Code, 29–6A–2(h), defines "favoritism" as "unfair treatment of an employee as demonstrated by preferential, exceptional or advantageous treatment of another or other employees." We do not find that the term "favoritism" is meant to supplant the concept of "equal pay for equal work" in W.Va.Code, 29–6–10 (1992). *See American Federation of State, County and Municipal Employees v. Civil Service Comm'n,* 181 W.Va. 8, 380 S.E.2d 43 (1989).

6. The parties made a joint motion in the Circuit Courts of Berkeley, Braxton, and Jackson Counties to remove all three actions to the Circuit Court of Kanawha County.

7. In its appeal, the Department explained that Mr. McLaughlin had been the chief of police of the Martinsburg Police Department for twenty years before joining the Department in 1987 as director of the Martinsburg Juvenile Detention Center. In 1989, he took a voluntary demotion to assume the position of juvenile probation officer, requiring him to move to a different classification and pay grade.

Under 10 W.Va.C.S.R. § 143–1–6.6 (effective May 16, 1991), wherein the Administrative Rules and Regulations of the West Virginia Civil Service Commission are stated, the current pay rate of "[a]n employee who is demoted ... may remain the same if his pay is within the pay range of the new classification[.]" The Department asserted that because Mr. McLaughlin's salary was within the pay range provided for probation officers, it remained the same when he was functionally demoted to the classification of juvenile probation officer.

that the hearing examiner in her June 13, 1991, order meant to require the Department to raise the appellees' salaries to that of Mr. McLaughlin. This conclusion was based upon the language of the hearing examiner's order that the Department needed to "equalize the salaries of grievants and Mr. McLaughlin so as to erase any illegal inequality." The Department appeals both of these orders.

## II.

### TIMELY APPEAL

■ Pursuant to W.Va.Code, 29–6A–7, either party may appeal the decision of a hearing examiner to the circuit court "within thirty days of receipt of the hearing examiner's decision." In this case, the hearing examiner's decision was filed on June 13, 1991, and was received by the Department on June 14, 1991. The Department filed its petition for appeal on July 16, 1991. Because the Department did not file its petition until thirty-two calendar days after receipt of the hearing examiner's decision, the appellees argue that the appeal was untimely.

■ We note initially that Article 6A of Chapter 29 deals exclusively with the grievance procedure for state employees. It contains a definitional section, whereby under W.Va.Code, 29–6A–2(c), "days" are defined as "working days exclusive of Saturday, Sunday or official holidays." We believe that W.Va.Code, 29–6A–7, which allows an appeal to the circuit court "within thirty days of receipt of the hearing examiner's decision," must be read *in pari materia* with W.Va.Code, 29–6A–2(c), which defines "days" as "working days exclusive of Saturday, Sunday or official holidays." This accords with our general rule contained in Syllabus Point 3 of *Farley v. Buckalew*, 186 W.Va. 693, 414 S.E.2d 454 (1992):

"'Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments.' Syllabus Point 3, *Smith v. State Workmen's Compensa-*

*tion Commissioner*, 159 W.Va. 108, 219 S.E.2d 361 (1975)."

Thus, although thirty-two calendar days elapsed between the Department's receipt of the hearing examiner's decision and the filing of its appeal, only twenty-one working days had elapsed between those dates. Consequently, the Department filed its appeal within the time limit prescribed in W.Va.Code, 29–6A–7.

## III.

### FILING FEE

■ As an alternate ground, the trial court dismissed the Department's appeal because it failed to pay the filing fee "in advance" as required by W.Va.Code, 59–1–11 (1990). This provision states:

"The clerk of a circuit court *shall* charge and collect for services rendered as such clerk the following fees, and such fees shall be paid *in advance* by the parties for whom such services are to be rendered:

"For instituting any civil action under the rules of civil procedure, any statutory summary proceeding, any extraordinary remedy, the docketing of civil appeals, or any other action, cause, suit or proceeding, seventy dollars[.]" (Emphasis added).

The appellees argue that the trial court's ruling was correct because the word "shall" in the statute creates a mandatory obligation that the fee be paid in advance. Moreover, the appellees claim that there is no provision that exempts the State from paying the filing fee. The Department counters by contending that such an interpretation places State agencies in an untenable situation because of the prohibition found in W.Va.Code, 12–3–10 (1923).

Under W.Va.Code, 12–3–10 (1923), it is "unlawful for any state officer to issue his requisition on the state auditor in payment of any claim unless an itemized account is filed in the office of the officer issuing the requisition." Because the circuit clerk will not file the appeal without the accompanying fee and the State Auditor will not pay for the service rendered unless he receives an invoice, the State argues, in essence, that it is precluded from filing an appeal.

Obviously, the legislature did not intend such a result and this case is the first we know of in which the State has found itself trapped on a filing fee issue. Unfortunately, both the trial court and the parties overlook W.Va.Code, 59–1–15 (1923), which directly prescribes the proper procedure. It states, in part: "There shall be paid out of the State treasury to clerks and sheriffs for services rendered the State in a civil case such fees as would be chargeable for the like service of an individual, *after such fees are duly certified to the auditor.*" (Emphasis added).

■ Thus, W.Va.Code, 59–1–15 (1923), creates a procedure for the payment of a filing fee by a State agency. Where the fee is owed by the State, the circuit clerk is required to certify to the auditor the amount of the filing fee due.[8] Under this procedure, when a State agency wishes to file an administrative appeal or other civil action, the circuit clerk should immediately provide the agency with a certificate that it can present to the Auditor for payment. Once payment is received, the circuit clerk can file the appeal. In situations where the appeal period is very short, such as appeals from administrative decisions, the clerk should file the appeal upon its receipt, certify to the Auditor the amount of the filing fee due, and then process the appeal once payment is received.

Because of the confusion surrounding the proper procedure to be followed, and because none of the parties were prejudiced by the State's delays in paying the filing fee, we find that the trial court erred in dismissing the Department's appeal.

## IV.

### GRIEVANCE ISSUE

■ In her decision, dated June 13, 1991, the Level IV hearing examiner concluded that the appellants had "made a *prima facie* showing that another SSW–III employed by [the Department], Mike McLaughlin, has been the recipient of favoritism, thereby raising a presumption thereof, which was not rebutted." Accordingly, the hearing examiner ordered the Department "to equalize the salaries of grievants and Mr. McLaughlin so as to erase any illegal inequality."

The hearing examiner addressed the issue of favoritism even though the issue had not been raised by the grievants in their original statements. Specifically, in footnote 11 of her decision, the hearing examiner acknowledged: "While this contention was not made in any of the original statements of grievance, it was clearly raised at the Level III hearing, where no objection thereto was made, and it was again addressed in Grievants' proposals."

The hearing examiner stated that the Department had "not articulated any reason whatsoever as to why Mr. McLaughlin's salary is so much higher than [the appellants']; the record is a complete blank." Once again, the hearing examiner did concede that the Department's failure to present any evidence on the issue of favoritism might have been attributable to the fact that "the issue was not raised until Level III" and that the Department "may not have had the opportunity to defend against the charge[s][.]"

■ Notwithstanding these reservations, the hearing examiner determined that she had authority to rule on the issue pursuant to W.Va.Code, 29–6A–3(j), which relates to hearing procedures used before a grievance evaluator where the evidence substantially alters the original grievance.[9] W.Va. Code, 29–6A–3(j), requires a grievance eval-

---

8. The mechanics of the State's filing fee payment are spelled out in the 1993 Practice and Procedure Manual for Circuit Clerk Officers. In Section 3.3 on page 20 of this Manual, circuit clerks are instructed as follows: "If a state agency wishes to file a suit, the clerk should certify to the auditor the filing fees that are due. When a check is drawn, the case may be filed."

9. The relevant portion of W.Va.Code, 29–6A–3(j), states:

"Once a grievance has been filed, supportive or corroborative evidence may be presented at any conference or hearing conducted pursuant to the provisions of this article. Whether evidence substantially alters the original grievance and renders it a different grievance is within the discretion of the grievance evalu-

uator to determine if the evidence being offered presents a new grievance. If a new grievance is found to exist, the evaluator can "decide to hear the evidence or rule that the grievant must file a new grievance," or "the parties may consent to such evidence[.]"

 The critical term is "grievance evaluator," which is defined in W.Va.Code, 29–6A–2(j), to mean an "individual authorized to render a decision on a grievance under procedural levels one, two and three as set out in section four [29–6A–4]." Thus, the final level of the grievance procedure where alteration of the substance of a grievance under W.Va.Code, 29–6A–3(j), can occur is at Level III.[10] *See Parsons v. West Virginia Bureau of Employment Programs,* 189 W.Va. 107, 428 S.E.2d 528 (1993).

Here, the grievance theory upon which relief was awarded at Level IV was based upon a claim of favoritism or disparate pay levels. Yet, this issue was not developed at the Level III hearing, as required by W.Va.Code, 29–6A–3(j). We have reviewed the Level III hearing and can find nothing in the resulting decision that discusses the presentation of new evidence nor any decision to incorporate the new issue of favoritism into the grievance. Moreover, although Michael McLaughlin's salary is compared to the three appellees' income in the findings of fact, the Level III evaluator did not reach a conclusion of law on the favoritism issue.

Accordingly, it was improper for the Level IV hearing examiner to rule on it. The error was compounded when the Department attempted to rebut this allegation in its petition for appeal to the circuit court. Rather than address the appeal on the merits, the circuit court dismissed the case without giving the Department an opportunity to defend its actions.

ator at the level wherein the new evidence is presented. If the grievance evaluator rules that the evidence renders it a different grievance, the party offering the evidence may withdraw same, the parties may consent to such evidence, or the grievance evaluator may decide to hear the evidence or rule that the grievant must file a new grievance."

## V.

For the reasons stated herein, we reverse the trial court's March 11, 1992 order and remand the case for further proceedings consistent with this opinion.

Reversed and remanded.

10. We note that under W.Va.Code, 29–6A–3(k), a change in the relief sought by a grievant may be granted at Level IV. However, in this case, it is clear that in this case, there was not merely a change in relief sought at Level IV.