599 S.E.2d 654

Robert W. POLING, Appellant
Below, Appellant,

v.

BOARD OF EDUCATION OF THE
COUNTY OF TUCKER, Cynthia Philips
Kolsun, Superintendent, Appellees Be-
low, Appellees.

No. 31572.

Supreme Court of Appeals of West Virginia.

Submitted: Feb. 25, 2004.

Filed: June 24, 2004.

**232**

John Everett Roush, Esq., West Virginia School Service, Personnel Association, Charleston, for Appellant.

Harry M. Rubenstein, Esq., Teresa J. Dumire, Esq., Kay, Casto & Chaney, PLLC, Morgantown, for Appellees.

PER CURIAM.

This is an appeal by Robert Poling from a decision of the Circuit Court of Kanawha County which affirmed a hearing examiner's ruling in a School Service Personnel grievance. On appeal, the appellant claims that the circuit court misconstrued the law, and that even under the construction of the circuit court, the facts did not support the ultimate decision in the case.

## I.

## FACTS

The appellant Robert Poling was working as a substitute school bus operator for the Tucker County Board of Education at the time the Board posted a. notice indicating that there was a substitute custodian vacancy. Mr. Poling applied for that vacancy, as did several other people. The Superintendent of the Tucker County Board of Education interviewed all applicants, and at the conclusion of the interviews, recommended that five individuals be placed on the substitute custodian list. Subsequently, those individuals were placed on the list. The appellant was not among the five individuals who were placed on the list.

Subsequently, on January 7, 2002, the Tucker County Board of Education posted a notice indicating that there was a vacancy for a substitute general maintenance position. The appellant and two other individuals applied for that position. The Superintendent of Schools interviewed all three applicants and, subsequently, Bill Simmons, rather than the appellant, was chosen for the position.

On February 6, 2002, the appellant filed a grievance in which he claimed that he should have been placed on the substitute maintenance list because he was the applicant with the most seniority. Later that month he filed a grievance claiming that he should have been placed on the substitute custodian list.

Both grievances were denied at Level I of the grievance process, and the cases proceeded to Level II. At Level II, the grievances were consolidated but were again denied. The procedure then progressed directly to Level IV at which a hearing was conducted on June 10, 2002, before an Administrative Law Judge.

After conducting a hearing, the Administrative Law Judge concluded that the Board of Education had made its decisions based upon the qualifications and previous experience of the individuals ultimately selected. The Administrative Law Judge also, in essence, ruled that the provisions of W. Va. Code 18A–4–8b, a Code section which deals with the seniority rights of, and selection process for, school service personnel, did not apply to the filling of temporary substitute positions.

The question of whether W. Va.Code 18A–4–8b applied to temporary substitute positions, such as the ones involved in the appellant's case, was relevant because W. Va.Code 18A–4–8b establishes objective criteria for filling the positions to which it applies. It provides that such positions shall be filled on the basis of seniority, evaluations, and qualifications. Elsewhere in the Code, objective criteria are established for the purposes of evaluating seniority,[1] and qualifications.[2] A holding that W. Va.Code 18A–4–8b did not apply in the appellant's case would allow the filling of the positions in question on the basis of more subjective factors.

The appellant appealed the Administrative Law Judge's decision to the Circuit Court of Kanawha County, and the circuit court, after taking the matter under consideration, affirmed the Administrative Law Judge's decision. In affirming the Administrative Law Judge's decision, the circuit court found that there was a distinction between a hiring for a substitute position and a hiring for a regular position. The court found, in essence, that W. Va.Code 18A–4–8b applied only to the

hiring for regular positions. The court also stated:

> Even if the provisions of West Virginia Code section 18A–4–8b were deemed to apply to hiring substitutes, Poling [the appellant] still would not be able to prevail in his grievance because he did not have seniority in any category other than as a bus driver. The statute in question requires hiring to be done on the basis of "seniority, qualifications, and evaluation of past service." Seniority as a substitute bus driver does not control the award of a position as a substitute custodian or substitute maintenance worker. Further, the successful applicants had better qualifications than Poling. Therefore, Poling could not prevail even if the statute at issue herein were deemed applicable.

It is from the circuit court's decision that the appellant now appeals.

## II.

### STANDARD OF REVIEW

Recently, in Syllabus Point 1 of *Cahill v. Mercer County Board of Education*, 208 W.Va. 177, 539 S.E.2d 437 (2000), this Court stated:

> Grievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo.

Further, in W. Va.Code 18–29–7, the Legislature indicated that the decision of a hearing examiner should be final unless it was

1. W. Va.Code 18A–4–8g deals with the determination of seniority.

2. W. Va.Code 18A–4–8b(b) defines "qualifications" for the purpose of W. Va.Code 14A–4–8b. The relevant text dealing with "qualifications" is quoted *infra* in the text of this opinion. Addi-

tionally, W. Va.Code 18A–4–8e provides, among other things, that: "Achieving a passing score [on a qualification test] shall conclusively demonstrate the qualifications of an applicant for a classification title."

contrary to law or exceeded the hearing examiner's statutory authority, or was the result of fraud or deceit, or was clearly wrong in view of the reliable, probative and substantial evidence on the whole record, or, finally, was arbitrary, capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.

## III.

### DISCUSSION

The appellant's first assertion in the present appeal is that a county board of education must fill temporary substitute service personnel positions pursuant to W. Va.Code 18A–4–8b and the circuit court erred in holding that the Code section did not apply where temporary substitute service personnel positions are involved.

In concluding that W. Va.Code 18A–4–8b did not apply to the employment of temporary service personnel substitutes, the circuit court construed W. Va.Code 18A–4–8b, *in pari materia*, W. Va.Code 18A–4–15, a statute which specifically deals with the hiring of service personnel substitutes. The court noted that in parts of W. Va.Code 18A–4–15, specific references to W. Va.Code 18A–4–8b are made, whereas, in other sections there are no such specific references. The court reasoned that, by making the specific references, the Legislature intended for W. Va. Code 18A–4–8b to apply only where the specific references were made, and not elsewhere. For example, W. Va.Code 18A–4–15(a) provides in subsection (a)(5) that a county board of education shall assign substitute service personnel on the basis of seniority, but goes on to provide that if the position which is filled by the substitute results from a regular employee's suspension, and if the suspension is for more than 30 working days and the suspended employee is not returned to his or her job, then "the board shall fill the vacancy under the provisions set out in section eight-b [§ 18A–4–8b] of this article and section five [§ 18A–2–5], article two of this chapter...."

■ This Court believes that the circuit court appropriately concluded that W. Va. Code 18A–4–8b should be construed *in pari*

*materia* with W. Va.Code 18A–4–15 in the present case, for the Court has recognized that statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be ascertained from the whole "of the enactments." *West Virginia Department of Health and Human Resources v. Hess,* 189 W.Va. 357, 432 S.E.2d 27 (1993).

■ However, the Court is mindful of two dominant principles of statutory construction. The first is that generally words of a statute are to be given their ordinary and familiar significance and meaning. *Hosaflook v. Consolidation Coal Company,* 201 W.Va. 325, 497 S.E.2d 174 (1997). The second principle is that the primary object in construing a statute is to ascertain and give effect to the intent of the Legislature. *Hosaflook v. Consolidation Coal Company, id.; West Virginia Division of Environmental Protection v. Kingwood Coal Company,* 200 W.Va. 734, 490 S.E.2d 823 (1997). When these principles are both applicable, the Court has indicated that the plain meaning of a statute is normally controlling, except in the rare case in which literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters. *Keatley v. Mercer County Board of Education,* 200 W.Va. 487, 490 S.E.2d 306 (1997).

West Virginia Code 18A–4–8b, one of the statutes in issue in the present case, states that it shall apply to "the filling of *any* service personnel positions of employment or jobs occurring throughout the school year ...." (Emphasis supplied.)

In *Thomas v. Firestone Tire and Rubber Company,* 164 W.Va. 763, 266 S.E.2d 905 (1980), this Court engaged in a lengthy examination of the meaning of the word "any" when used in a statute. The Court noted that authorities attributed to the word the meanings "no matter which" and "whichever, of whatever kind, of whatever quantity." In the *Firestone* case, the Court concluded that the word "any" when used in statutes dealing with debt collection practices had what was, in effect, the meaning "every" or "all."

■ By its plain meaning, this Court believes that W. Va.Code 18A–4–8b, which

states that it applies to "the filling of *any* service personnel positions ...," applies to the filling of all personnel positions, including the ones involved in the present case, and that is what the Court should hold unless such a holding violates the plain intent of the Legislature.

As previously stated, the circuit court felt that the specific mention of W. Va.Code 18A–4–8b in W. Va.Code 18A–4–15 suggested that the Legislature did not intend for W. Va. Code 18A–4–8b to apply in all situations covered by W. Va.Code 18A–4–15, but only to the specific sections where the mention of W. Va.Code 18A–4–8b was made.

An examination of W. Va.Code 18A–4–15, if made in a piecemeal way, might suggest that the Legislature did not intend for 18A–4–8b to apply to the hiring for every service personnel position. However, in looking at the situation closely, and after reading the two statutes together *en toto*, the Court believes that the legislature had a different purpose in mind in making a specific reference to W. Va.Code 18A–4–8b in W. Va.Code 18A–4–15. For example, in a key section to which reference to W. Va.Code 18A–4–15 is made, the Legislature stated that:

> The county board of education shall employ and the county superintendent, subject to the approval of the county board, shall assign substitute service personnel on the basis of seniority to perform any of the following duties ...
>
> (5) To fill the vacancy created by a regular employee's suspension: Provided, That if the suspension is for more than thirty working days the substitute service employee shall be assigned to fill the vacancy on a regular basis and shall have and be accorded all rights, privileges and benefits pertaining to the position until the termination by the county board becomes final. If the suspended employee is not returned to his or her job, the board shall fill the vacancy under the procedures set out in section eight-b [§ 18A–4–8b] of this

article and section five [§ 18A–2–5], article two of this chapter....

W. Va.Code 18A–4–15(a)(5). In the absence of the last sentence quoted, W. Va.Code 18A–4–15(a)(5) would suggest that if a regular employee is suspended for more than 30 working days, the substitute service employee would, in effect, step into his shoes and be accorded the rights accorded the regular employee. By adding the final sentence quoted, the Legislature, this Court believes, indicated that the substitute employee did not step into the shoes of the regular employee and regularly occupy the position. Instead, the Legislature indicated that if the suspended employee did not return to his or her job, the position would become a vacant position fillable under the procedures established for the filling of regular vacant positions.

After carefully considering the issues involved, this Court, contrary to the holding of the circuit court, believes that the references to W. Va.Code 18A–4–8b contained in W. Va.Code 18A–4–15 do not indicate that W. Va.Code 18A–4–8b does not apply to the hiring of service personnel substitutes. Instead, the language of W. Va.Code 18A–4–8b, in this Court's opinion, plainly indicates that it does apply to such hiring and such a holding is not demonstrably at odds with the intentions of the legislative drafters of W. Va.Code 18A–4–8b and W. Va.Code 18A–4–15. The Court also believes there are similar explanations for the other references to W. Va.Code 18A–4–8b contained in W. Va.Code 18A–4–15.[3]

Consequently, this Court concludes that the circuit court erred in holding that W. Va.Code 18A–4–8b did not apply to the hiring of the appellant in the present case.

The Court notes that the Board of Education of Tucker County in its brief argues that even if W. Va.Code 18A–4–8b applies, the appellant was not entitled to be hired under the circumstances of the present case.

As has been previously stated, W. Va.Code 18A–4–8b requires that a board of education fill service personnel positions on the basis of

---

**3.** For instance, W. Va.Code 18A–4–15(a)(2), provides that where a regular employee takes an extended leave of absence, the position shall be filled according to W. Va.Code 18A–4–8b, rather than by a substitute holding over. W. Va.Code 18A–4–15(a)(6) indicates that the filling of a new position on a regular basis shall be according to W. Va.Code 18A–4–8b.

seniority, qualifications and evaluation of past service. The Code section then proceeds to define qualifications for the purpose of implementing the requirement. W. Va. Code 18A–4–8b(b) specifically provides:

Qualifications shall mean that the applicant holds a classification title in his category of employment as provided in this section and must be given first opportunity for promotion and filling vacancies. Other employees then must be considered and shall qualify by meeting the definition of the job title as defined in section eight [§ 18A–4–8] of this article, that relates to the promotion or vacancy.

W. Va.Code 18A–4–8b(b) also provides:

Applicants shall be considered in the following order:

(1) Regularly employed service personnel;

(2) Service personnel whose employment has been discontinued in accordance with this section;

(3) Professional personnel who held temporary service personnel jobs or positions prior to the ninth day of June, one thousand nine hundred eighty-two, and who apply only for such temporary jobs or positions;

(4) Substitute service personnel; and

(5) New service personnel.

 The documents filed in the present case indicate that of the individuals who applied for the custodian positions advertised by the Board of Education of Tucker County, Rene Nester had been employed by the Board as a Half-time Custodian II/III [apparently a slightly different position from the one advertised], and that Bill Simmons had previously held a regular position with the Board of Education as a Custodian III. The Court believes that it may be reasonable to infer from the information that Ms. Nester and Mr. Simmons were qualified within the meaning of W. Va.Code 18A–4–8b to perform the work for the custodial position advertised by the Board of Education. However, the documents also suggest that the appellant had passed the appropriate competency tests and that he possessed the requisite qualifications to qualify as a custodian under that job title as defined by W. Va.Code 18A–4–8, and, in this Court's view, he, thus, met the qualifications for the job as prescribed by W. Va. Code 18A–4–8b. Although the documents filed do not show that the other applicants were disqualified, one was employed at McDonald's at the time of applying, one had previously been employed by the Board of Education as a cook, and the third was apparently not employed by the Board of Education at the time.

As has previously been stated, W. Va.Code 18A–4–8b requires that applicants be considered in a specific order. Regularly employed service personnel must first be considered before other applicants. Of the applicants involved in the present case, Rene Nester may have fallen within this category and that it was appropriate for the Superintendent of Schools to recommend that she be placed upon the substitute list. The second category of applicants to be considered are service personnel whose employment has been discontinued in accordance with the provisions of W. Va.Code 18A–4–8b, and the third group of applicants are those professional personnel who held temporary service personnel jobs or positions prior to the 9th day of June, 1988. The record indicates that Bill Simmons had worked for the Board of Education, as had Wanda Knotts, although it is not clear that they fell within the other requirements for the second and third levels of consideration. Both Mr. Simmons and Ms. Knotts were placed upon the substitute list. The fourth category of individuals to be considered are substitute service personnel, the group into which the appellant fell. The appellant was not placed upon the substitute list, and, instead, Madeline Arnold and Chuck White, two individuals who do not appear to have fallen in any of the prior categories, were placed on the list. The Board of Education argues that Ms. Arnold, by being employed at McDonald's, had been involved with custodial work, and that Chuck White had also done custodial work, and that their experience thus made them more qualified than the appellant.

As has previously been stated, qualification for consideration under W. Va.Code 18A–4–8b is specifically defined as meeting the defi-

nition of the job title as described in W. Va.Code 18A–4–8, and the appellant clearly met that job title. In this Court's view, the fact that Ms. Arnold and Mr. White had experience doing the type work involved in the job opening advertised did not render them more "qualified," within the special meaning attached to that word by W. Va. Code 18A–4–8b, than the appellant, and that in light of the fact that W. Va.Code 18A–4–8b requires that individuals be considered in a special order in which the appellant held a position superior to that of Ms. Arnold and Mr. White, indicates that he should have been placed on the list before they were placed on the list. In failing to find that this was appropriate, the circuit court erred.

 Finally, the Court notes that the appellant applied to be placed on the substitute general maintenance list. Only the appellant, Bill Simmons and Chuck White applied for this position. Mr. Simmons had held the position in previous years, and the Board relied upon the fact that he was the only applicant who had completed training on how to fire the coal fired furnaces in two Tucker County schools in placing him on the list ahead of the appellant.

In advertising the vacancy for the general maintenance position, the Board of Education had specifically stated that general knowledge of a coal furnace was required for the position, but also indicated that eight hours of training and a test would be given if necessary.

W.Va.Code 18A–4–8, which defines various service personnel positions, states: " 'General maintenance' means personnel employed as helpers to skilled maintenance employees and to perform minor repairs to equipment and buildings of a county school system." The definition does not require that the position holder be able to routinely operate heating systems. To the contrary, the same Code section indicates that a "Custodian III" is the person who is to operate heating systems. Specifically, the Code states: " 'Custodian III' means personnel employed to keep buildings clean and free of refuse, to operate the heating and cooling systems and to make minor repairs."

Since the Board plainly indicated that training would be given if needed, and that the Board did not refer to ability to operate the coal fired furnaces in conjunction with the actual custodian positions advertised, this Court believes that the fact that Mr. Simmons was able to operate a coal fired furnace did not render him the most appropriate individual to place on the substitute general maintenance list and that the filling of the substitute general maintenance position should have been in accordance with the other provisions of W. Va.Code 18A–4–8b.

In view of the foregoing, this Court believes that the judgment of the Circuit Court of Kanawha County must be reversed and that the appellant should be placed upon the substitute custodian list as advertised by the Board of Education of Tucker County. The question of who is the most appropriate individual for the substitute general maintenance position advertised should be reconsidered and the individual chosen should be selected in line with the requirements of W. Va.Code 18A–4–8b.

Reversed and remanded.