475 S.E.2d 405

**Brenda QUINN, Plaintiff
Below, Appellee,**

v.

**WEST VIRGINIA NORTHERN COMMUNITY COLLEGE, Defendant
Below, Appellant.**

No. 23068.

Supreme Court of Appeals of
West Virginia.

Submitted April 23, 1996.

Decided July 5, 1996.

**314**

Darrell V. McGraw, Jr., Attorney General, Rosemary Humway, Assistant Attorney General, Charleston, for Appellant.

Joseph J. John, John Law Offices, Wheeling, for Appellee.

McHUGH, Chief Justice:

This case is before this Court upon an appeal from the final order of the Circuit Court of Ohio County, West Virginia, entered on February 28, 1995. Pursuant to that order, the circuit court directed the appellant, West Virginia Northern Community College, to instate the appellee, Brenda Quinn, as Director of Financial Aid at that institution, with back pay. In so holding, the circuit court reversed a level IV decision of the West Virginia Education and State Employees Grievance Board which determined that Ms. Quinn was not entitled to the position.

This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons stated below, the February 28, 1995, order is reversed, and the circuit court is directed to reinstate the level IV decision.

I

Ms. Quinn was employed by West Virginia Northern Community College in 1989 and worked in the financial aid office of the College. The duties of that office concerned the assistance of students seeking financial aid while attending the College and included the implementation of various scholarship programs and federal financial aid regulations. Over a period of time, Ms. Quinn was promoted to the position of Financial Aid Advisor II. The financial aid office and its Director were under the authority of the Dean of Students at West Virginia Northern Community College, Sharon Bungard. According to the petition for appeal, Ms. Bungard had nineteen years of service at the College and had once been Director of Financial Aid.

In July 1991, Jamie Scott resigned as Director of Financial Aid, creating a vacancy in that position which continued for approximately one year. Although the evidence is conflicting as to whether Ms. Quinn became the *de facto* Director of Financial Aid following Scott's departure, Ms. Quinn, without doubt, "single-handedly" kept the financial aid office going during that interim period. She received an additional $100 per month in compensation for the extra work. Nevertheless, according to the College, Ms. Bungard, rather than Ms. Quinn, was ultimately responsible for the financial aid office.

In early 1992, the College advertised for the position of Director of Financial Aid, and Ms. Quinn filed an application. A selection committee consisting of West Virginia Northern Community College personnel reviewed twenty-five such applications and recommended Ms. Quinn to Ron Hutkin, the College President. The record is clear, however, that the selection committee was of the opinion that none of the applicants, including Ms. Quinn, were completely satisfactory for the position. Consequently, Ms. Quinn was recommended by the selection committee "with reservations." [1]

1. The qualifications for the position of Director of Financial Aid were set forth by West Virginia Northern Community College as follows:
   Master's degree preferred, Bachelor's degree with firm commitment to pursue Master's degree required. Strong written and oral communications skills, experience in awarding, tracking, and verification areas of financial aid along with experience in computerized financial aid systems essential.

By letter dated August 3, 1992, Ms. Quinn was informed that she had not been selected for the position. Instead, President Hutkin assigned the duties of Director of Financial Aid to Dean of Students, Sharon Bungard, and Ms. Bungard's title became Dean of Student Development, Institutional Research, Financial Aid and Marketing. President Hutkin indicated below that he took that action because the pool of applicants for the position of Director of Financial Aid was not strong and he thought it to be in the best interests of the College and the students "to take a person internally, Ms. Bungard, who has financial aid experience," rather than to reopen the search for applicants. Soon after, however, the position of Assistant Director of Financial Aid was created and advertised by the College administration. Ms. Quinn applied for that position, was selected, and is currently the Assistant Director of Financial Aid at West Virginia Northern Community College.

Nevertheless, Ms. Quinn filed a grievance with the West Virginia Education and State Employees Grievance Board asserting that she should have been selected for the position of Director of Financial Aid. *W.Va. Code*, 29–6A–1 [1988], *et. seq.*[2] Following an evidentiary hearing conducted in September 1992, the level II hearing examiner determined, *inter alia*, that the selection committee "expressed concerns about the grievant's ability to perform in the position" and denied the grievance. Similarly, following an evidentiary hearing conducted in January 1993, the level IV administrative law judge denied the grievance. As the level IV decision, dated October 29, 1993, states:

> Nor is there any evidence of record that Dr. Hutkin abused discretion or acted arbitrarily and capriciously by not offering Grievant the Director's position. Despite the fact that grievant happened to be the top applicant, she was merely the best from among others who were adjudged by a selection committee of six as having not entirely met the Director's qualifications.

Ms. Quinn appealed the level IV decision to the Circuit Court of Ohio County. *W. Va.Code*, 29–6A–7 [1988]. The circuit court, as reflected in its final order of February 28, 1995, reversed the level IV decision and directed West Virginia Northern Community College to instate Ms. Quinn as Director of Financial Aid, with back pay. The ruling of the circuit court was based, primarily, upon a determination that Ms. Quinn was qualified for the position. This appeal followed.

## II

The appeal provisions of *W. Va.Code*, 29–6A–7 [1988], concerning the West Virginia Education and State Employees Grievance

During the grievance proceedings below, evidence was adduced by the College to the effect that it was the consensus of the selection committee that "no one met all the criteria fully." Moreover, the College listed the following concerns with regard to Ms. Quinn:

    a. ability to read and interpret Federal and State regulations and to make policy for compliance with these regulations;

    b. demonstrate greater computer literacy on PC and Mainframe and ability to set time sequences for implementation of BANNER;

    c. evaluate current processes with respect to students when current processes were not working;

    d. discern difference between policy and process with respect to Federal policy statements;

    e. willingness to accept coaching from supervisor.

Ms. Quinn responded to those concerns by emphasizing that her qualifications for the position of Director of Financial Aid were proven during the period of vacancy when she performed all duties necessary to keep the financial aid office going.

2. It should be noted that the procedures of the West Virginia Education and State Employees Grievance Board are set forth in chapter 29, article 6A, of the *West Virginia Code*. Another series of statutes concerning grievance procedures may be found in chapter 18, article 29, of the *West Virginia Code*, and although Ms. Quinn cites *W. Va.Code*, 18–29–1 [1992], *et seq.*, as the basis for her grievance, *W. Va.Code*, 29–6A–5 [1988], states: "The education employees grievance board, created by virtue of the provisions of section five [§ 18–29–5], article twenty-nine, chapter eighteen of this code, shall be hereafter known and referred to as the education and state employees grievance board[.]" Accordingly, inasmuch as the grievance decisions in this case emanated from the West Virginia Education and State Employees Grievance Board, this case is subject to the provisions of *W.Va.Code*, 29–6A–1 [1988], *et seq. See Harrison County Board of Education v. Carson–Leggett*, 195 W.Va. 596, 598 n. 1, 466 S.E.2d 447, 449 n. 1 (1995).

Board, and the appeal provisions of *W. Va. Code,* 18–29–7 [1985], concerning the former Educational Employees Grievance Board, are similar. *See* n. 2, *supra.* Under those statutes, an appeal may be taken to a circuit court where the final grievance decision:

(1) was contrary to law or a lawfully adopted rule, regulation or written policy of the employer, (2) exceeded the hearing examiner's statutory authority, (3) was the result of fraud or deceit, (4) was clearly wrong in view of the reliable, probative and substantial evidence on the whole record, or (5) was arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*W. Va.Code,* 29–6A–7 [1988].

■ Referring to the latter chapter and article of the *West Virginia Code,* this Court, in syllabus point 1 of *Randolph County Board of Education v. Scalia,* 182 W.Va. 289, 387 S.E.2d 524 (1989), held as follows: "A final order of the hearing examiner for the West Virginia Educational Employees Grievance Board, made pursuant to W.Va.Code, 18–29–1, *et seq.* (1985), and based upon findings of fact, should not be reversed unless clearly wrong." *See also* syl. pt. 1, *Martin v. Randolph County Board of Education,* 195 W.Va. 297, 465 S.E.2d 399 (1995); syl. pt. 1, *Bolyard v. Kanawha County Board of Education,* 194 W.Va. 134, 459 S.E.2d 411 (1995); syl. pt. 1, *Ohio County Board of Education v. Hopkins,* 193 W.Va. 600, 457 S.E.2d 537 (1995); syl. pt. 3, *Lucion v. McDowell County Board of Education,* 191 W.Va. 399, 446 S.E.2d 487 (1994); syl. pt. 1, *Department of Natural Resources v. Myers,* 191 W.Va. 72, 443 S.E.2d 229 (1994); syl. pt. 1, *Department of Health v. Blankenship,* 189 W.Va. 342, 431 S.E.2d 681 (1993); syl. pt. 3, *Butcher v. Gilmer County Board of Education,* 189 W.Va. 253, 429 S.E.2d 903 (1993). As we noted in *Bolyard, supra,* the above principle of *Scalia* is, of course, "consistent with our observation that rulings upon questions of law are reviewed *de novo.*" 194 W.Va. at 136, 459 S.E.2d at 413.

■ Similarly, we also hold that a final order of the hearing examiner for the West Virginia Education and State Employees Grievance Board, made pursuant to *W. Va. Code,* 29–6A–1, *et seq* [1988], and based upon findings of fact, should not be reversed unless clearly wrong.

■ Here, West Virginia Northern Community College contends that President Hutkin had the discretion to act as he did in assigning the duties of the Director of Financial Aid to Dean of Students, Sharon Bungard, especially in view of the concerns of the selection committee with regard to the pool of applicants, including Ms. Quinn. *See* 10 *W. Va.Code of State Rules,* 131–59–3 (1993), concerning the duty of the president of each college in the State College System, including West Virginia Northern Community College, to develop a competent and equitable administrative and staff organization. Accordingly, the College asserts that the circuit court erroneously substituted its judgment for that of the level IV administrative law judge.

On the other hand, Ms. Quinn contends that, inasmuch as the parties agree that Ms. Quinn was a "nonexempt classified employee" working as a Financial Aid Advisor II when she applied for the position of Director of Financial Aid, Ms. Quinn was entitled to the position over a non-applicant, i.e., Ms. Bungard. In that regard, Ms. Quinn cites *W. Va.Code,* 18B–7–1(d) [1993], which states:

A nonexempt classified employee [in higher education] . . . who meets the minimum qualifications for a job opening at the institution where the employee is currently employed, whether the job be a lateral transfer or a promotion, and applies for same shall be transferred or promoted before a new person is hired unless such hiring is affected by mandates in affirmative action plans or the requirements of Public Law 101–336, the Americans with Disabilities Act.

In further support for her contention, Ms. Quinn cites this Court's decision in *Webster County Board of Education v. Johns,* 191 W.Va. 664, 447 S.E.2d 599 (1994).

In the *Webster County* case, Wanetta Johns, an employee of the Webster County Board of Education, applied for a kindergarten aide position. The position, however, was given to another employee who did not

apply for the position and who had less seniority than Ms. Johns. The controlling statute in *Webster County* was *W.Va.Code*, 18A–4–8b [1988], which required a county board of education to fill service personnel positions, such as classroom aides, upon the basis of an applicant's seniority, qualifications and evaluation of past service. Holding that Ms. Johns was entitled to the kindergarten aide position, we stated, in *Webster County*, in syllabus point 2:

> Given that the terms 'applicant' and 'apply' appear to be an integral part of West Virginia Code sec. 18A–4–8b (1988), a board of education clearly exceeds its discretion in assigning an individual to a newly-created service personnel position who did not apply for the position, but was otherwise qualified for the opening, when another individual, holding the necessary qualifications and superior seniority, applied for the position.

However, as Ms. Quinn acknowledges, the provisions of *W. Va.Code*, 18B–7–1(d) [1993], set forth above, were not promulgated until 1993, after the events in this case occurred. Moreover, this Court's decision in *Webster County* was rendered even later in time. In any event, neither that statute nor our decision in *Webster County* is dispositive in favor of Ms. Quinn. First, the benefit concerning job openings conferred upon higher education employees under *W.Va. Code*, 18B–7–1(d) [1993], is dependent, *a priori*, upon meeting the "minimum qualifications" for the position. Moreover, no issue was raised in *Webster County* concerning whether Ms. Johns was qualified for the kindergarten aide position. Here, however, a clear question of fact was raised and litigated below concerning Ms. Quinn's qualifications for the position of Director of Financial Aid, and the finder of fact, the level IV administrative law judge, resolved that question against Ms. Quinn.

The above provisions of *W. Va.Code*, 18B–7–1(d) [1993], and the circumstances of *Webster County* differ from this case in another respect. Under *W. Va.Code*, 18B–7–1(d) [1993], an employee meeting the minimum qualifications for a job opening is entitled to that job "before a new person is hired," and the *Webster County* decision distinguishes those who have applied for a position from those who have not. Those distinctions, however, are deprived of significance in the context of this case. Here, Dean of Students, Sharon Bungard, was not a new person hired to take the position of Director of Financial Aid within the meaning of *W. Va.Code*, 18B–7–1(d) [1993]. Rather, Ms. Bungard had nineteen years of service at West Virginia Northern Community College and had once been Director of Financial Aid at that institution. Moreover, although it is true that Ms. Bungard did not file an application for the position of Director of Financial Aid, she was, already, ultimately responsible for that office. President Hutkin, expressing concern with regard to the applicant pool for the position, simply combined the duties of Director of Financial Aid with Ms. Bungard's other duties and conferred upon her the title of Dean of Student Development, Institutional Research, Financial Aid and Marketing.

In *Sexton v. Marshall University*, 182 W.Va. 294, 387 S.E.2d 529 (1989), the former Education Employees Grievance Board upheld the discharge of a university employee for gross insubordination. The circuit court reversed, and the university appealed. This Court, concluding that the circuit court had erroneously substituted its judgment for that of the administrative law judge, reinstated the decision of the Education Employees Grievance Board. As the opinion in *Sexton* observes:

> Upon judicial review of a contested case under *W. Va.Code*, 18–29–7, the circuit court's ability to reverse the hearing examiner's decision is limited to five grounds: 'that the hearing examiner's decision (1) was contrary to law or lawfully adopted rule, regulation or written policy of the chief administrator or governing board, (2) exceeded the hearing examiner's statutory authority, (3) was the result of fraud or deceit, (4) was clearly wrong in view of the reliable, probative and substantial evidence on the whole record, or (5) was arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.'

182 W.Va. at 296, 387 S.E.2d at 531. *See also Board of Education v. Wirt*, 192 W.Va. 568, 578–79, 453 S.E.2d 402, 412–13 (1994), stating that a reviewing court is not entitled

to reverse a finder of fact "simply because it may have decided the case differently."

In this case, the record is clear that the selection committee was of the opinion that none of the applicants, including Ms. Quinn, were completely satisfactory for the position of Director of Financial Aid. Consequently, Ms. Quinn was recommended by the selection committee "with reservations." *See* n. 1, *supra.* As the brief of West Virginia Northern Community College states: "If no applicant entirely meets the criteria that is in the job posting and no applicants meet all the qualifications that the institution is seeking, then the decision of the President not to fill the position with an unqualified applicant cannot be said to be an abuse of discretion." Although this Court is not unmindful that Ms. Quinn performed most, if not all, of the duties of Director of Financial Aid during the period of vacancy, the question of her ultimate qualifications for that position were disputed below during extensive evidentiary hearings before the West Virginia Education and State Employees Grievance Board. The October 29, 1993, level IV decision of the administrative law judge was well reasoned and documented and not clearly wrong.[3]

Upon all of the above, therefore, the final order of the Circuit Court of Ohio County is reversed, and this case is remanded to that court for the entry of an order reinstating the October 29, 1993, level IV decision of the administrative law judge of the West Virginia Education and State Employees Grievance Board.

Reversed and remanded.

---

**3.** In addition, Ms. Quinn asserts that she declined an offer of employment at West Virginia University in Morgantown, West Virginia, in detrimental reliance upon assurances from the administration of West Virginia Northern Community College that she would be selected for the position of Director of Financial Aid. That assertion, however, also resulted in a question of fact which was litigated below and resolved against Ms. Quinn by the level IV administrative law judge. According to West Virginia Northern Community College, at no time was Ms. Quinn promised that she would receive the position of Director of Financial Aid. In fact, as a College

administrator testified during the grievance proceedings below: "I spoke to Brenda and told her she must make her decision with regard to that WVU offer without any consideration as to what was going on at West Virginia Northern. That— that she had to do what was best for her." A fair assessment of the record demonstrates that, although West Virginia Northern Community College demonstrated a degree of institutional hubris in its lack of adequate communication with Ms. Quinn concerning the status of her application, the decision of the level IV hearing examiner concerning this issue was not clearly wrong.