630 S.E.2d 49

Cecil PRITT, et al., Appellants
Below, Appellees

v.

WEST VIRGINIA DIVISION OF COR-
RECTIONS, and Huttonsville Correc-
tional Center, Appellees Below, Appel-
lants.

No. 32851.

Supreme Court of Appeals of
West Virginia.

Submitted: Feb. 14, 2006.

Decided: April 11, 2006.

**740**

Darrell V. McGraw, Jr., Attorney General, John H. Boothroyd, Assistant Attorney General, Charleston, for Appellants.

Kelly R. Reed, Reed Kimble, P.L.L.C., Morgantown, for Appellees.

PER CURIAM:

The West Virginia Division of Corrections and Huttonsville Correctional Center (collectively referred to herein as "Corrections") appeal from a January 14, 2005 order of the Circuit Court of Randolph County, which reversed an April 3, 2003, decision of the West Virginia Education and State Employees Grievance Board (herein referred to as "Board"). In its April 3, 2003, decision, the Board held that the Appellee correctional officers at the Huttonsville Correctional Center had not met their burden of proving a

*prima facie* case of discrimination. Appellees had filed a grievance against corrections claiming discrimination because they did not receive a five-percent salary increase that certain other correctional officers had received solely for completion of the mandatory Officers Apprenticeship Program ("OAP"). The Board found the Appellees were not similarly situated to the other correctional officers. The Board had found that the other correctional officers were entitled to the five-percent salary increase based upon the Board's decision in *Whorton v. Division of Corrections,* Docket No. 96–CORR–078 (June 25, 1996).

Appellees appealed the Board's decision to the Circuit Court of Randolph County. The circuit court reversed the Board's decision finding a *prima facie* case of discrimination had been established, that *Whorton* had not obligated Corrections to award a five-percent salary increase solely for completion of the OAP to any correctional officer, and that Corrections' reliance upon *Whorton* was a pretext for discrimination. Finding discrimination had been established, the circuit court held that Appellees were entitled to a five-percent salary increase retroactive to their completion of the OAP, with interest. Corrections timely appealed the circuit court's January 14, 2005, order to this Court. On September 8, 2005, we accepted Corrections' appeal for further review. Upon consideration of the record created below, the parties' written and oral arguments and pertinent legal authorities, we reverse the circuit court's January 14, 2005, order and remand this matter for further proceedings as set forth herein.

## I.

### FACTUAL AND PROCEDURAL HISTORY

In 1994, the State of West Virginia undertook a process of reclassifying state employees, including correctional officers. During this reclassification process, Corrections made the previously voluntary OAP a re-

quirement for all correctional officers.[1] At the time this requirement became effective on April 1, 1994, a number of correctional officers had completed the program voluntarily or were about to complete it. Persons classified as a Correctional Officer—I ("CO–I")[2] who had voluntarily completed the OAP were reclassified to a Correctional Officer—II ("CO–II") and given a salary increase to the entry level CO–II salary unless the person's salary exceeded that level, in which case no increase was initially provided. No consideration/salary adjustment was given to correctional officers classified at CO–II or higher who had completed OAP voluntarily. In response to complaints, Corrections thereafter provided an overall five-percent salary increase to all reclassified CO–II's retroactive to April 1, 1994. Correctional officers who had attained a rank of CO–II or higher at the time of the reclassification and who had voluntarily completed the OAP, or were about to complete the same, filed a grievance in 1995 arising from the decision to award a five-percent salary increase to CO–I's who had voluntarily completed the OAP prior to the new policy. Upon consideration of the grievants' arguments, Corrections awarded them a prospective merit five-percent salary increase, effective September 1, 1995.

Those grievants in the case known as *Wharton* pursued their claim to a Level IV hearing before the Board alleging discrimination because the reclassified CO–Is received a retroactive increase, while grievants' increase was prospective only. The Board agreed with the grievants and held, in *Whorton*, that Corrections had no legal duty to award the reclassified CO–I's a higher salary than that required by Division of Personnel regulations or to make the same retroactive to April 1, 1994. The Board likewise found that Corrections had no legal duty to grant grievants a salary increase for completion of

the OAP. However, the Board went on to hold that once Corrections decided to grant a salary increase solely for the voluntary completion of the OAP, it was required to do so evenly among all those entitled to the increase. Therefore, Corrections' decision to award the raise retroactively to one group and prospectively to another similarly situated group discriminated against the latter. Thus, pursuant to *Whorton*, the five-percent salary increase for correctional officers ranked higher than CO–I on April 1, 1994, who had voluntarily completed or were about to complete the OAP was made retroactive to April 1, 1994.

The decision in *Whorton* was followed by *Livesay v. Division of Corrections*, 96–CORR–459 (November 4, 1997), which found discrimination arising from the failure to grant the grievants therein a five-percent salary increase for completion of the OAP. The Board rejected Corrections' alleged non-discriminatory reason that the OAP was required to be completed by all CO–I's and upon completion, the CO–I would automatically be reallocated to CO–II (with additional salary) as pretextual. According to the Board, the reclassification therein was based upon a change in duties, not simply by completing the OAP. Citing *Whorton*, the Board found the grievants in *Livesay* entitled to a five-percent salary increase for completion of OAP.

Subsequent to the *Whorton* and *Livesay* decisions, Corrections implemented Policy Directive 442, effective April 1, 1998, specifically setting forth the salary adjustment for reclassification from a CO–I to a CO–II, including the prerequisite completion of the OAP. Policy Directive 442[3] was amended and reenacted as Policy Directive 145, effective December 1, 1999. Policy Directive 145 states, in pertinent part:

---

1. Effective April 1, 1994, all newly hired correctional officers were required to enroll in the OAP and complete it within two years of enrollment. Current correctional officers who had not previously enrolled in the program voluntarily were required to do so pursuant to the new policy.

2. Of the four levels of correctional officer classifications CO–I is the entry level correctional officer classification.

3. Under Policy Directive 442, reallocation or promotion could not take effect without a certificate of completion of the OAP. Salary increases were to be governed by applicable Division of Personnel rules.

3. The Director of Training, Corrections Academy, shall request a certificate of completion of apprenticeship from the Bureau of Apprenticeship and Training upon the officer's completion of the program.

c. The Certificate of Completion shall be the basis for initiating the process to reallocate the correctional officer to the appropriate classification in accordance with Section 4.07 of the WV Division of Personnel Administrative Rule.

d. Each incumbent shall be compensated as specified in Section 5.05 of such rule.

e. Additional pay or promotion shall not be effective until final approval of a WV Personnel Action Form WV–11.

The Division of Personnel rules cited in the policy directive govern position reallocation and pay on promotion.[4]

Cecil Pritt was hired by Corrections sometime after 1994. He completed the OAP on June 23, 1998 after Corrections implemented Policy Directive 442, and was reallocated to CO–II on September 16, 1998, receiving a five-percent salary increase. Joseph Daniels began employment with Corrections in April 2000, completed the OAP on May 23, 2002, after Corrections amended Policy Directive 442 and reenacted it as Policy Directive 145, and was reallocated to CO–II on June 15, 2002, receiving a five-percent salary increase. On January 21, 2002, over three years after his reallocation to CO–II, Mr. Pritt, together with 22 other correctional officers, filed a grievance alleging discrimination because certain other employees had received an additional five-percent salary increase solely for completion of the OAP while they had not. Mr. Daniels filed a similar grievance on July 22, 2002, one month after his reallocation to CO–II. These grievances were denied at Levels I, II, and III. Prior to the Level IV Hearing, numerous other correctional officers at the Huttonsville Correctional Center joined the grievances, which were consolidated for Level IV hearing.[5]

At the Level IV hearing, the correctional officers presented evidence that nine other correctional officers had received a five-percent salary increase solely for completion of the OAP since 1998. Each of those nine correctional officers were employed as correctional officers in April 1994 at a rank higher than CO–I and completed the OAP after it became a mandatory requirement. Corrections argued, and the Board found, as a matter of fact, the raises were given to those nine correctional officers pursuant to the *Whorton* decision. The Board also found that correctional officers who have been hired and who have completed the OAP after implementation of the 1998 policy directive have not received a separate salary increase solely for completion of the OAP. It appears from the record before this Court that no evidence was presented to the Board to demonstrate the date of hire of any grievant other than Mr. Pritt and Mr. Daniels, their rank, or the date they completed the OAP. Ultimately, the Board held the grievants had not established a *prima facie* case of discrimination in that they are not similarly situated to the class of employees entitled to a five-percent increase under *Whorton*.

The grievant correctional officers appealed to the Circuit Court of Randolph County arguing the Board's decision was (1) contrary to law or lawfully adopted rule or written policy of employer; (2) clearly wrong in light in view of the evidence on the record; and (3) arbitrary, capricious and an abuse of discretion. While conceding the applicable policy directive and administrative rules did not expressly authorize a five-percent salary increase for completion of the OAP, the grievants argued such an increase was likewise not expressly precluded. The circuit court accepted this argument and found a *prima facie* case of discrimination had been established. The circuit court further found Correction's reliance on *Whorton* to be mere pretext for discrimination. In its conclusions of law, the circuit court found Corrections' proffered legitimate, non-discriminatory reason for not awarding a five-percent salary

---

4. The policy directive refers to Division of Personnel administrative rules 4.07 and 5.05. These rules are currently codified as 143 W. Va.C.S.R. 1–4.7 (2005) and 143 W. Va.C.S.R. 1–5.5 (2005).

5. It appears from the record before this Court that 78 correctional officers, in addition to Mr. Pritt and Mr. Daniels, are currently parties to this grievance proceeding.

increase for completion of the OAP to the grievants to be "pretextual" because (1) Policy Directive 145 and Rules 4.7 and 5.5 do not prohibit such an increase; and (2) even if they did prohibit it, Corrections should not have awarded such an increase to any employee regardless of hire date. The circuit court concluded neither *Whorton* nor *Livesay* obligate Corrections to award a five-percent salary increase solely for completion of the OAP to any employee. Therefore, the circuit court found that Corrections engaged in discrimination by awarding such an increase to some, but not all, correctional officers. Finding the correctional officers were entitled to a five-percent salary increase solely for completion of the now mandatory OAP, the circuit court remanded the matter to the Board for additional findings necessary to calculate the amount each was due and owing.

## II.

### STANDARD OF REVIEW

The instant matter involves the circuit court's reversal of the Board's decision, a decision made after a full evidentiary hearing and briefing by the parties. An appeal of a final Board decision to the circuit court is permitted on the grounds that the decision:

(1) Is contrary to law or a lawfully adopted rule or written policy of the employer;

(2) Exceeds the hearing examiner's statutory authority;

(3) Is the result of fraud or deceit;

(4) Is clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or

(5) Is arbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted abuse of discretion.

W. Va.Code § 29–6A–7(b) (1998). In light of the statutory standard, this Court held in Syllabus Point 1 of *Cahill v. Mercer County Board of Education*, 208 W.Va. 177, 539 S.E.2d 437 (2000), that:

[g]rievance rulings involve a combination of both deferential and plenary review.

Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo.

Further, we have concluded that:

[a] final order of the hearing examiner for the West Virginia Education and State Employees Grievance Board, made pursuant to *W. Va.Code*, 29–6A–1, *et seq.* [1988], and based upon findings of fact, should not be reversed unless clearly wrong.

Syllabus, *Quinn v. W. Va. Northern Community College*, 197 W.Va. 313, 475 S.E.2d 405 (1996). In reviewing a circuit court decision, this Court is bound by the same standards which the circuit court was obligated to follow in reviewing the Board's decision. *Martin v. Randolph County Bd. of Educ.*, 195 W.Va. 297, 304, 465 S.E.2d 399, 406 (1995); *Cahill*, 208 W.Va. at 180, 539 S.E.2d at 440. Thus, to the extent the Board's decision is based upon a factual determination, it may not be reversed unless such determination is clearly wrong.

## III.

### DISCUSSION

In reversing the Board's decision, the circuit court determined that the correctional officers had established a *prima facie* case of discrimination. Our statutes governing state employee grievances define discrimination as "any differences in the treatment of employees unless such differences are related to the actual job responsibilities of the employees or agreed to in writing by the employees." W. Va.Code § 29–6A–2(d) (1988). When discussing an identical definition of discrimination contained within the statutes governing educational employees,[6] this Court recently noted:

within the Article governing grievance proce-

6. W. Va.Code § 18–29–2(m) (1992), contained

the policy underlying uniformity and discrimination claims under the education statutes is to prevent discrimination against similarly situated education employees regardless of the basis for discrimination. The crux of such claims is that the complainant was treated differently than similarly situated employees[.]

*Board of Education of the County of Tyler v. White*, 216 W.Va. 242, 246, 605 S.E.2d 814, 818 (2004). Accordingly, a critical component of any discrimination claim is the determination that the person or persons alleging improper discrimination are similarly situated to those allegedly receiving preferential treatment.

■ A similarly situated determination is necessarily factual in nature. *See, Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2nd Cir.2000) ("Whether two employees are similarly situated ordinarily presents a question of fact for the jury."); *George v. Leavitt*, 407 F.3d 405, 414–15 (D.C.Cir.2005) (quoting *Graham*); *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2nd Cir.2003). In the instant matter, the Board specifically found the evidence on the record did not demonstrate that any grievant was similarly situated to the correctional officers who received a five-percent raise solely for completion of the OAP. In order to reverse the Board's finding that grievants failed to establish a *prima facie* case, the circuit court must find the Board's finding that the grievants were not similarly situated to those allegedly receiving preferential treatment to be clearly wrong. The circuit court did not make such a finding.

Absent the circuit court finding that the factual determination by the Board was clearly wrong in light of the evidence on the record, the circuit court erred in finding that the grievants had established a *prima facie* case of discrimination. This Court's independent review of the record before the Board and the circuit court does not support a determination that the Board's finding that grievants were not similarly situated to those receiving a five-percent increase for completion of the OAP was clearly wrong.

The evidence on the record indicates that the only correctional officers who received a five-percent salary increase solely for completion of the OAP after implementation of the 1998 policy directive were employed as correctional officers in 1994 at a rank higher than CO–I and that they completed the OAP after it became a mandatory requirement. The Board found that those officers were entitled to such an increase pursuant to prior Board decisions. The circuit court disagreed, finding that prior Board decisions did not mandate the increase and that Corrections' reliance upon the same to award salary increases to certain correctional officers was a mere pretext for discrimination. The question of pretext, however, only arises once a *prima facie* case of discrimination has been established. Having found that the circuit court erred in reversing the Board's finding that a *prima facie* case of discrimination had not been established because grievants were not similarly situated to those allegedly receiving preferential treatment, we likewise find that the circuit court erred in deeming Corrections' reliance upon prior Board decisions,[7] the policy directive and administrative rules to be mere pretexts for discrimination. The question of pretext was not properly before the circuit court.

We, thus, reverse the decision of the Circuit Court of Randolph County and reinstate the Board's April 7, 2003 Decision. However, we note from our review of the record in this matter that evidence regarding rank,

dures for education employees, defines "discrimination" as "any differences in the treatment of employees unless such differences are related to the actual job responsibilities of the employees or agreed to in writing by the employees."

7. We pause to note that we are making no determination as to whether the prior Board decisions require Corrections to continue to provide five-percent salary increases solely for completion of the OAP to correctional officers employed in 1994 at a rank higher than CO–I and who com-

pleted the OAP after it became a mandatory requirement. The Board found, as a matter of fact, that Corrections continued to give such increases only to those meeting that criteria. Even if Corrections is mistaken as to its legal duties under the prior Board decisions, this Court will not institutionalize such a mistake. We will only require Corrections to act consistently with respect to those fulfilling the applicable criteria regarding date of hire, rank and OAP completion.

dates of employment and completion of the OAP appears to have been presented to the Board only on behalf of Mr. Pritt and Mr. Daniels. To the extent the remaining seventy-eight (78) correctional officers who joined this grievance can establish that they were employed as correctional officers at a rank higher than CO–I in 1994, that they completed the OAP after it became a mandatory requirement and that they have not received a five-percent salary increase for completion of the OAP, such individuals may be able to establish that they are similarly situated to those receiving such an increase and establish a *prima facie* case of discrimination. We, therefore, remand this matter to the circuit court with directions that this case be remanded to the Board for the taking of evidence and the entry of a determination as to whether the remaining 78 grievants are similarly situated to those receiving a five-percent salary increase for completion of the OAP and are entitled to a similar salary increase.

## IV.

## CONCLUSION

Accordingly, the Circuit Court of Randolph County's January 14, 2005, order is reversed and the West Virginia Education and State Employees Grievance Board's April 7, 2003, decision is reinstated, with the caveat that the Board must determine whether any of the remaining 78 grievants can satisfy the similarly situated requirement and establish a *prima facie* case of discrimination. This matter is remanded to the circuit court with directions that this case be remanded to the West Virginia Education and State Employees Grievance Board for further proceedings consistent with this opinion.

Reversed and Remanded