452 S.E.2d 42

Jacqueline LARGENT, Charlotte Kingrey, Mary Carter, Ella Roberts and Rachel Smith, Petitioners/Appellants,

v.

WEST VIRGINIA DIVISION OF HEALTH and West Virginia Division of Personnel, Respondents/Appellees.

No. 21864.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 24, 1994.

Decided Nov. 18, 1994.

Opinion Concurring in Part and Dissenting in Part by Justice McHugh Nov. 23, 1994.

17. *See* note 9, *supra.*

Darrell V. McGraw, Atty. Gen., Robert M. Nunley, George P. Surmaitis, Asst. Attys. Gen., Charleston, for appellees.

Larry Harless, Charleston, for appellants.

NEELY, Justice.

The Appellants in this case, Jaqueline Largent, Charlotte Kingrey, Mary Carter, Ella Roberts, and Rachel Smith filed a grievance against the West Virginia Division of Health (now the Department of Health and Human Resources) and the West Virginia Division of Personnel, after they discovered that a fellow worker, D.M.,[1] was making 18 percent more money than the Appellants were for doing the same work. The Appellants contend that because D.M. is making more money for doing the same work, the principle of "equal pay for equal work" has been violated and that their constitutional rights to equal protection and due process have also been violated. We disagree. Therefore, we affirm the ruling of the Circuit Court of Cabell County affirming the Level IV administrative law judge.

All of the employees involved in this case, including D.M., are female licensed practical nurses ("LPNs") at Huntington State Hospital ("HSH"). All the LPNs are classified as

---

1. This employee is known in these proceedings    by her initials, D.M.

LPN II's (pay grade 11); however, D.M. is paid at step five within that grade while the other LPNs are paid at step one. The difference in pay between step one and step five is $2,600 per year. ·

## I.

■ The first issue is whether it is proper for HSH to pay D.M. at step five of grade 11 according to state law governing civil servants. D.M. was originally hired in 1983 as an LPN I. When D.M. was originally hired, she was paid at step nine of the LPN I classification. HSH asserts that the reason D.M. was hired at step nine instead of step one of the LPN I classification was the shortage of qualified nurses at the time due to market competition from private employers in the Huntington area.[2] Additionally, HSH points to D.M.'s experience as well above the minimum requirements for the LPN I job classification and her education. After reviewing the *Code* sections and Administrative Rules in question, we determine that the original hiring of D.M. at an advanced step did not violate West Virginia law for the following reasons.

■ The West Virginia Legislature allows agencies to consider a broad range of factors when setting the salary of a new employee. *W.Va.Code* 29–6–10 [1992]. Initially, to be hired at an advanced step an applicant must meet or exceed the minimum requirements for a particular job classification. Once it is determined that the applicant exceeds the minimum training and/or experience requirements by six months or more, the starting salary of the appointee may be raised to any rate within the classification so long as the employee has six months experience for each step he or she is given above the minimum.[3] The Administrative Rules of the West Virginia Division of

Personnel, which are promulgated pursuant to *W.Va.Code*, 29–6–10 [1992], and which were in effect in 1983, provided in pertinent part that:

(b) *Entry Salary*—The entry salary for any employee shall be at the minimum salary for the class. *However, an individual possessing qualifying training or experience above the minimum required for the class,* as determined by the Director, *may be appointed at a pay rate above the minimum* unless otherwise limited by the Commission. For each step above the minimum, the individual must have in excess of the minimum requirements at least six months of pertinent experience or equivalent pertinent training.

Administrative Rules of the Division of Personnel § 6.04(b) (Emphasis added).[4]

The minimum qualification for the LPN I classification is a current West Virginia license or temporary permit to practice as a licensed practical nurse. Not only did D.M. meet this qualification, she far exceeded it. At the time she was hired, D.M. had an Associate Degree in Applied Science in the Field of Practical Nursing from Hocking Technical College, 3.5 continuing education units from Marshall University, 150 quarter hours in the field of Fine Arts from Ohio University, and five years and four months of work experience as a nurse. Therefore, the original hiring of D.M. as an LPN I at an advanced step was authorized by West Virginia law. It should also be noted that none of the parties disputes the fact that D.M. was appropriately hired or that she deserved the original advanced step appointment.

■ After working four years as an LPN I, D.M. brought a misclassification grievance and prevailed; thus, D.M. was promoted to LPN II, the next classification above LPN I.

---

2. Huntington, West Virginia, has a large number of hospitals for a city its size. In addition to HSH, there is St. Mary's Hospital, Cabell Huntington Hospital, HCA River Park Hospital, and a Veterans Administration Medical Center.

3. This law was changed after D.M. was hired. According to current policy, "the Director, may [appoint a new employee] at a pay rate above the minimum, *up to the mid-point of the salary range....*" 143 CSR1 § 143–1–5(5.4(b)).

4. These rules were filed pursuant to the authority of *W.Va.Code*, 29–6–10 and became effective 1 December 1981. For some strange reason the only copy available from the Secretary of State was filed 27 December 1982, although the document sets forth the 1 December 1981 effective date.

The Rules of the Division of Personnel in effect at the time of D.M.'s reclassification stated that:

> The salary of an employee who is promoted shall be adjusted to the minimum rate of the new class. *If the incumbent's current pay rate is at or above the minimum rate for the new class, but coincides with a step in the new range, the salary shall be adjusted one step in the range. Where the pay rate does not coincide with a step in the new range, the salary shall be adjusted to the next higher rate which provides at least a full step increase.*

Administrative Rules § 6.05(a) (emphasis added) (see note 4 above). In other words, if someone is promoted to a higher classification, he or she should not be required to take a pay cut or remain at the same salary, but get a raise—this only makes sense. Under the facts of this case, D.M. was making more money at an advanced step as an LPN I than the Appellants in this case were making at the lowest step in the LPN II classification. When Rule 6.05(a) was applied after D.M.'s reclassification, she fell into step 5 of the LPN II classification. Once again, the record and the briefs in this case reflect that none of the parties is disputing the fact that D.M. should be paid at step 5 of the LPN II classification. With this in mind, and after reviewing the specifics of D.M.'s case, we determine that HSH has done nothing inappropriate in paying D.M. at step 5 of the LPN II classification.

## II.

The Appellants argue that the current system violates the "principle of equal pay for equal work." The Appellants also present additional arguments based on violations of their constitutional rights to equal protection and due process.

West Virginia's "Equal Pay for Equal Work" statute can be found at *W.Va. Code,* 21–5B–1 to 6 [1965]. The *Code* defines "employer" as "any person, partnership, firm or corporation employing one or more employees, *but does not include the State, or any municipal corporation or political subdivision of the State having in force a civil service system based on merit....*" *W.Va. Code,* 21–5B–1(1) [1965]. Because the West Virginia Division of Health and Human Services and the West Virginia Division of Personnel have in place a duty-linked civil service system, they are not covered by *W.Va. Code,* 21–5B–1 to 6 [1965]. The statute goes on to explain that the State may be covered by a federal "equal pay for equal work" statute.

The federal Equal Pay Act may be found at 29 U.S.C. § 206(d) (1988).[5] The federal act has been held constitutionally to apply to state and local government employees. *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985) (applying all aspects of the Fair Labor Standards Act to state and local governments); *Usery v. Charleston County School Dist.,* 558 F.2d 1169 (4th Cir.1977). More specifically, the law has been held constitutionally to apply to state-operated hospitals and their employees. *Marshall v. Owensboro–Daviess County Hospital,* 581 F.2d 116 (6th Cir.1978). However, the federal Equal Pay Act has not been held to extend to people of the same sex. The purpose of the Equal Pay Act of 1963 was to remedy the problem of employment discrimination against women, *i.e.,* the fact that wage structures of many segments of American industry were based on the ancient belief that a man, because of his role in society, should be paid more than a woman even though his duties be the same. *Corning Glass Works v. Brennan,* 417 U.S. 188,

---

5. The federal Equal Pay Act states that:
   No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or equality of production; or (iv) a differential based on any factor other than sex....

   29 U.S.C. § 206(d)(1) (1988).

94 S.Ct. 2223, 41 L.Ed.2d 1 (1974). The Equal Pay Act was intended as a broad charter of women's rights in the workplace, and seeks to eliminate the depressing effect on living standards that reduced wages for female workers has and the serious economic and social consequences that flow from reduced wages. *See Hodgson v. Behrens Drug Co.,* 475 F.2d 1041 (5th Cir.), *cert. denied,* 414 U.S. 822, 94 S.Ct. 121, 38 L.Ed.2d 55 (1973).

■ As noted earlier, all of the persons involved in this case are women. Although the federal Equal Pay Act was designed to prohibit discrimination based on sex, there is no indication that it prohibits paying employees of the same gender different wages for the same work based on skill, education, and experience. Therefore, the Appellants cannot establish a prima facie case under the federal Equal Pay Act or the West Virginia Equal Pay Act. Thus, the Appellants must look elsewhere in the *Code* for relief.

### A.

■ The Appellants cite *W.Va.Code,* 29–6–10(2) [1992] for the proposition that any discrepancy in pay among public employees must be linked to demonstrable differences in the employees' duties responsibilities, or qualifications. The Appellants also cite this section as mandating equal pay for equal work, thus making it illegal to hire a new employee at a higher step than incumbent employees in the same classification. Because the Appellants put so much weight on *W.Va.Code,* 29–6–10 [1992], we will examine it in depth. *W.Va.Code,* 29–6–10(2) [1992] states in pertinent part:

The board shall have the authority to promulgate, amend or repeal rules ...

(2) For a pay plan for all employees in the classified service, after consultation with appointing authorities and the state fiscal officer, and after a public hearing held by the board.... Each employee shall be paid at one of the rates set forth in the pay plan for the class of position in which he is employed. The principle of equal pay for equal work in the several agencies of the state government shall be followed in the pay plan established hereby.

This Court has interpreted this *Code* section as not necessarily being sex-linked, but rather, duty-linked. *See AFSCME v. CSC,* 174 W.Va. 221, 324 S.E.2d 363 (1984) (*"AFSCME I"*); *AFSCME v. CSC,* 176 W.Va. 73, 341 S.E.2d 693 (1985) (*"AFSCME II"*); *AFSCME v. CSC,* 181 W.Va. 8, 380 S.E.2d 43 (1989) (*"AFSCME III"*). That is, employees who are performing the same tasks with the same responsibilities should be in the same job classification regardless of gender.

In *AFSCME I,* a group of Economic Service Worker I's and II's were found to be performing the same work as Economic Service Worker III's. Because the employees were working out of their classification, this Court ruled that the employees were entitled to the difference in pay between the Economic Service Worker I or II classification and the Economic Service Worker III classification. *AFSCME I,* only required the employees be paid the same schedule of pay as those in the higher classification and did not set the step within the higher classification they should be paid. This Court has never commented on the propriety of having different steps within a classification.

■ However, after reviewing Title 143, Series 1 of the *West Virginia Civil Service Rules & Regulations,* issued under the authority of *W.Va.Code,* 29–6–10, Ser. 1 (1981) (amended 1993), we conclude that it does not violate the principle of pay equity for the state to pay employees within the same classification differing amounts. Indeed, a policy under which the Civil Service Commission was mandated to pay every individual within the same class the exact same pay would be in direct conflict with the intent expressed in the Preamble to 143 C.S.R. § 1 *et seq.* (1981) (amended 1993).

Sec. 2.01. *Preamble.* The general purpose of the Civil Service System is to attract to the service of this State personnel of the highest ability and integrity by the establishment of a system of personnel administration based on merit principles and scientific methods governing the appointment, promotion, transfer, layoff, removal, discipline, classification, compensation, and welfare of its Civil Service employees, and other incidents of state em-

ployment. *All appointments and promotions to positions in the classified service shall be made solely on the basis of merit and fitness.* All employment positions not in the classified service, with the exception of the Board of Regents, are included in a classification plan known as classified-exempt service. [Emphasis added.]

The Appellants basically contend that each person within the same classification should be paid the exact same dollar amount because they are performing the same work, irrespective of diversity of educational background and past work experience. However, administrative and statutory authority negates such a conclusion. Classification itself is duty based. Therefore, the reason D.M. and the appellants are all classified as Licensed Practical Nurse II's at Division of Personnel, pay grade 11, is because they are expected to perform essentially the same duties.

However, as expressed in the Preamble, *supra,* the Legislature clearly contemplated a system that recognized and rewarded merit. Thus, within a classification, salaries are subdivided into different pay steps. Each step is accorded a pay rate within the overall minimum and maximum range per classification. All of the relevant language in the definition section of the Administrative Rules and Regulations of the West Virginia Civil Service System reflects the Legislative intent to allow the state to maintain a certain degree of flexibility in setting employee compensation within a classification. 143 C.S.R. § 3 (1981) (amended 1993).

*Class or Class of Positions:* One or more positions sufficiently similar in duties, training, and responsibilities so that the same title, the same qualifications, and the same schedule of compensation and benefits may be equitably applied to each position.

*Compensation Plan:* The official schedule of pay rates, the range assigned to each class of positions and the salary regulations used in pay administration by the Civil Service agencies.

*Pay Plan:* The official schedule of salaries approved by the Governor consisting of multiple pay grades with minimum, maximum, and intervening rates of pay for each grade.

*Pay Rate:* One of the fixed steps or increments listed in a pay plan.

*Salary Range:* The approved monthly and annual salary for a class which includes the initial, maximum, and intervening steps.

*Specification:* The official description of a class of position which defines the class, provides examples of work performed, knowledges [sic], skills, and abilities, and the minimum qualifications required for employment.

*Step for Step:* The movement of an employee's salary to the same or corresponding step or pay rate in a higher or lower pay grade.

▬ The mere fact that D.M. was promoted into LPN II, at pay step five, thereby paid more than the incumbent Appellants who were classified as LPN II, at pay step one, does not automatically give rise to an inference of discrimination. *See Hollingsworth v. State of Louisiana,* 354 So.2d 1058 (La.App. 1 Cir.1978) (allowing different salaries within a classification); *Gaspard v. Dept. of State Civil Service,* 634 So.2d 14 (La.App. 1 Cir.1994) (civil service commission was not mandated to pay employees within the same class the exact same pay; equal pay for equal work was not violated) D.M. was initially hired as an LPN I. In view of the market competition, the shortage of qualified nurses, and over five years of relevant work experience, she was appointed well above the minimum pay rate for an LPN I, permissible under 143 C.S.R. § 6.04(b) (1981). (Tr. at 98, 103–105).

Four years later, D.M. won a misclassification grievance resulting in promotion to LPN II. Since her salary as an LPN I was higher than the minimum rate offered at pay step one for an LPN II, the Civil Service Rules and Regulations *mandated* her salary be adjusted one step above the step where her previous salary fit into the range accorded for an LPN II. 143 C.S.R. § 6.05(a) (1981). This assured that D.M., and any other per-

son promoted to a higher classification, would not receive a decrease in salary as a result.

The appellants have not challenged the propriety of placing D.M. at pay step five, within the classification of LPN II. They simply feel that it is unlawful discrimination to pay her more than they are paid for the same work. We disagree. The record reflects that the manner in which D.M. is receiving more pay than the Appellants is a result of the discretionary mechanics of the system, not from any discriminatory application or implementation of the pay plan. *Hollingsworth, supra* at 1060. D.M. was promoted to LPN II at a step level which was based upon the amount of her previous salary as an LPN I; thus, the nondiscretionary application of 143 C.S.R. § 6.05(a) (1981) resulted in her placement at pay step five.

*W.Va.Code,* 29–6–10(2) [1992] recognizes the fact that within a classification there may be different rates.

> 6.02. *Preparation of Plan*—After consultation with the appointing authorities and State fiscal officers and after a public hearing, the Director and the Commission shall prepare and submit to the Governor for his approval an annual revision of the pay plan. *The pay plan shall include salary schedules containing multiple pay grades with initial, intervening, and maximum rates of pay for each grade.* Periodic amendments to the pay plan may be made in the same manner.

*See* 143 C.S.R. § 6.02 (1981). Thus, the Legislature allowed for a system in which workers would be doing the same work but paid at different rates within a classification.

The *Code* establishes a multi-step pay plan and the implementing regulations set forth procedures to assist in determining where on that pay plan an individual employee can be placed. This system allows some flexibility in the hiring process and aids the state in attracting quality people to public service. Moreover, this flexibility allows for fluctuations in market conditions allowing the State to take into consideration other factors when hiring new employees such as the applicant's education and work experience. In short, employees who are doing the same work must be placed within the same classi-

cation, but within that classification there may be pay differences if those differences are based on market forces, education, experience, recommendations, qualifications, meritorious service, length of service, availability of funds, or other specifically identifiable criteria that are reasonable and that advance the interests of the employer. *See generally West Virginia University v. Decker,* 191 W.Va. 567, 447 S.E.2d 259 (1994). Accordingly, we do not find that this system violates the principle of pay equity set out in *W.Va. Code,* 29–6–10, *et seq.* [1992].

### III.

The Appellants' equal protection rights have not been violated here. Governmental decisions that are based upon legitimate economic considerations are not violative of equal protection. *Moody v. Gainer,* 180 W.Va. 514, 377 S.E.2d 648 (1988) (permitting salary differences for magistrates based on population). As shown above, the multistep plan described in *W.Va.Code,* 29–6–10 [1992], is based on legitimate economic considerations that bear a rational relationship to the governmental objective of attracting qualified applicants to employment in the classified service.

Furthermore, because there is a reasonable relationship to a legitimate governmental interest, substantive due process is not violated either. *See McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *Means v. Sidiropolis,* 184 W.Va. 514, 401 S.E.2d 447 (1990); *DeCoals, Inc. v. Board of Zoning Appeals of City of Westover,* 168 W.Va. 339, 284 S.E.2d 856 (1981) (holding that if there is any rational connection between the legislation's legitimate ends and the means by which the ends are to be reached, the legislation will be upheld). The State's interpretation of the statutes and administrative rules in this case adheres to the reasonable relationship test that traditionally applies to statutes that do not affect suspect categories such as race or gender. For this reason, neither the *Code* sections nor the administrative rules questioned by Appellants violate substantive due process.

For all of the reasons discussed above, the judgment of the Circuit Court of Cabell County is affirmed.

Affirmed.

BROTHERTON, C.J., did not participate.

MILLER, Retired Justice, sitting by temporary assignment.

McHUGH and CLECKLEY, JJ., dissent, in part, and concur, in part, and reserve the right to file a dissenting and concurring opinion.

McHUGH, Justice, concurring in part and dissenting in part:

(Filed Nov. 23, 1994)

I concur with the majority opinion with regard to its general conclusions that state agencies may consider a broad range of factors when setting the salary of a new employee and that employees who are performing the same tasks with the same responsibilities should be placed within the same job classification. However, there is a lack of factual development in the majority opinion and, because of that lack of factual development, I am further of the opinion that syllabus point 4 of the opinion is overly broad and unjustified. For those reasons, I dissent.

The principle of "equal pay for equal work" has received not only recognition in federal and state statutes, as the majority opinion indicates, but also recognition by this Court in various contexts. In particular, "equal pay for equal work" was discussed by this Court in the "AFSCME" cases, *AFSCME v. Civil Service Commission,* 181 W.Va. 8, 10, 380 S.E.2d 43, 45 (1989); *AFSCME v. Civil Service Commission,* No. 17929 (W.Va. *Per Curiam* order May 20, 1988); *AFSCME v. Civil Service Commission,* 176 W.Va. 73, 75, 341 S.E.2d 693, 695 (1985); and *AFSCME v. Civil Service Commission,* 174 W.Va. 221, 225, 324 S.E.2d 363, 367 (1984), and in other cases, *West Virginia Dept. of Health and Human Resources v. Hess,* 189 W.Va. 357, 432 S.E.2d 27, 29 n. 5 (1993); *State ex rel. West Virginia Magistrates Association v. Gainer,* 175 W.Va. 359, 363, 332 S.E.2d 814, 818 (1985); *Atchinson v. Erwin,* 172 W.Va. 8, 11–12, 302 S.E.2d 78, 81 (1983); and syl. pt. 4, *Donaldson v. Gainer,* 170 W.Va. 300, 294 S.E.2d 103 (1982).

The majority opinion sets forth, at length, the qualifications, training and experience of D.M. for the LPN II classification but does not mention the qualifications, training and experience of the appellants, although much of that information is contained in the record before us. Furthermore, although the majority opinion emphasizes flexibility, it implies that D.M. is receiving more pay than the appellants because of the "mechanics" of the system.

Finally, although market forces may be a factor to consider in the setting of the salary of a new employee, the majority opinion discusses market forces to the exclusion of a factual comparison between the qualifications, training and experience of D.M. and the appellants. Therefore, the majority opinion unjustly concludes in syllabus point 4 that "*W.Va.Code,* 29–6–10 [1992], does not provide that employees who are performing the same tasks with the same responsibilities be placed at the same step within a job classification." The majority opinion's assumption that only D.M.'s background and circumstances need be discussed is, as I indicated in another matter, "too tenuous a premise upon which to anchor any steady standard of law." *State ex rel. J.L.K. v. R.A.I.,* 170 W.Va. 339, 346, 294 S.E.2d 142, 149 (1982).

I am authorized to state that Justice CLECKLEY joins in this separate opinion.