727 S.E.2d 652

**Randy HAMMOND, et al., Appellants**

v.

**WEST VIRGINIA DEPARTMENT OF TRANSPORTATION, DIVISION OF HIGHWAYS and The Division of Personnel, Appellees.**

No. 11–0284.

Supreme Court of Appeals of West Virginia.

Submitted April 18, 2012.

Decided May 9, 2012.

Davis, J., dissented, with opinion.

Andrew J. Katz, Esq., Charleston, WV, for Appellants.

Krista D. Black, Esq., Charleston, WV, for Appellees.

PER CURIAM:

The appellants in this case, several employees of the Division of Highways,[1] have brought this appeal from an order of the Circuit Court of Kanawha County affirming a decision by the West Virginia Public Employees Grievance Board (hereinafter the Board). This case involves a decision by the West Virginia Department of Transportation, Division of Highways (hereinafter DOH) to provide a wage increase for current and newly hired employees in three counties that are part of its District 5 operations.[2] The appellants, who work in DOH's District 1 counties,[3] filed administrative grievances contending that they were victims of unlawful discrimination because of DOH's failure to provide them with a wage increase. The Board and the circuit court found no merit to the appellants' contention. In this appeal the appellants argue that the lower tribunals erred in finding (1) that they were not similarly situated as the District 5 workers, (2) that no management employee at District 1 complained of recruitment and retention problems, and (3) that some grievances were not timely filed. After a careful review of the briefs, record submitted on appeal and listening to the arguments of the parties, we affirm.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

The record in this case indicates that beginning in 2002, District 5 management complained to DOH that there was a shortage of applicants for positions in the counties of Berkeley, Jefferson and Morgan. In response to the complaints, DOH performed a study to determine the possible causes for the shortage of applicants. Ultimately DOH concluded that the private sector offered higher wages to potential District 5 workers. In order to remedy the problem of recruiting and retaining workers for District 5, DOH submitted a proposal to the Division of Personnel (hereinafter DOP) on May 16, 2005, requesting a pay differential for a defined group of District 5 employees.[4] The propos-

---

1. The extremely limited record filed in this appeal does not disclose the actual names of the appellants, nor how many appellants are involved in this appeal. According to an administrative order the appellants are members of the AFSCME union. It also appears that there are numerous cases similar to this case that are pending below and will be resolved based upon the decision reached in this appeal.

2. The District 5 counties involved are Berkeley, Jefferson and Morgan.

3. The District 1 counties include Boone, Clay, Kanawha, Mason and Putnam.

4. The proposal was designed to affect the following job classifications: Transportation Worker, I, II and III; Transportation Crew Chief; Transportation Crew Chief Supervisor I and II; and Highway Administrator II.

al requested a 15% wage increase for employees in the defined group, and a 25% pay differential for incoming employees.

The pay differential proposal submitted by DOH to DOP was approved and became effective on July 1, 2005.[5] In approving the pay differential DOP noted that "[w]e have seen similar recruitment problems for other agencies in these counties due to the generally better economic climate and proximity to higher paying jobs in the nearby states of Maryland and Virginia."

Subsequent to DOP approving DOH's pay differential proposal, the appellants filed grievances alleging DOH unlawfully discriminated against them by failing to provide them with the same pay increase.[6] After administrative evidentiary hearings were held, a final decision was rendered by the Board on February 14, 2008, rejecting the appellants' grievances. The appellants filed an appeal with the circuit court. By order entered December 22, 2009, the circuit court affirmed the Board's decision. This appeal followed.

## II.

### STANDARD OF REVIEW

In this proceeding we are called upon to review a decision of the circuit court that affirmed a decision of the Board.[7] We have held that "[w]hen reviewing the appeal of a public employees grievance, this Court reviews decisions of the circuit court under the same standard as that by which the circuit court reviews the decision of the administrative law judge." Syl. pt. 1, *Martin v. Barbour County Board of Education*, 228 W.Va. 238, 719 S.E.2d 406 (2011).

Grievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo.

Syl. pt. 1, *Cahill v. Mercer County Board of Education*, 208 W.Va. 177, 539 S.E.2d 437 (2000). With these standards in mind we will consider the issues presented in this appeal.

## III.

### DISCUSSION

#### Similarly Situated Employees

The dispositive issue raised by the appellants is that DOH's failure to provide them with the wage increase given to District 5 workers constituted unlawful discrimination within the meaning of W.Va.Code § 6C–2–2(d) (2008).[8] For the purposes of W.Va.Code

---

5. DOP rejected DOH's pay increase for one position; Highway Administrator II.

6. The appellants also named DOP as a party in the grievance.

7. The procedure governing appeals of a decision of an administrative law judge in a public employee grievance case is set forth in W.Va.Code § 6C–2–5 (2007).

8. At the time that the appellants filed their grievances, the definition of discrimination that governed the case was contained in W.Va.Code § 29–6A–2(d) of the Grievance Procedure For State Employees Act (the Act). In 2007 the Act was repealed and replaced with W.Va.Code § 6C–2–1 et seq. The definition of discrimination contained in the new statute, W.Va.Code § 6C–2–2(d), is slightly different from the definition under W.Va.Code § 29–6A–2(d). West Virginia Code § 6C–2–2(d) has added the phrase

"similarly situated" which was not expressly contained in the repealed statute. However, prior to the repeal of the old statute, this Court had recognized that "a critical component of any discrimination claim is the determination that the person or persons alleging improper discrimination are *similarly situated* to those allegedly receiving preferential treatment." *Pritt v. West Virginia Div. of Corrections*, 218 W.Va. 739, 744, 630 S.E.2d 49, 54 (2006) (emphasis added). This is to say that our prior case law required a state employee alleging unlawful discrimination under the now repealed statute prove that he or she was "similarly situated." Therefore, insofar as W.Va.Code § 6C–2–2(d) has not added any requirement for proving discrimination that was not already required by statute and case law when the appellants filed their grievances, we will analyze the discrimination allegations of this case under the new statute.

§ 6C–2–2(d), discrimination "means any differences in the treatment of similarly situated employees, unless the differences are related to the actual job responsibilities of the employees or are agreed to in writing by the employees." The appellants contend that the lower tribunals erred in finding that they were not "similarly situated" as District 5 workers for purposes of receiving a raise in wages. The trial court and the Board found that the appellants were not similarly situated to District 5 workers because (1) appellants work in different geographic areas, and (2) that to the extent DOH received any complaints regarding the inability to attract employees in District 1, such complaints did not rise to the level of those received by DOH for District 5.

The first argument that the appellants make is that the lower tribunals should not have considered the problem of retention and recruitment for a specific geographical area, in determining whether they were similarly situated to District 5 workers. The appellants contend that all that should have been considered is whether they were "doing the same basic work as those employees to which they are comparing themselves." We reject this contention. It is provided under 143 C.S.R. 1 § 5.4.f.4 that DOP "may approve the establishment of pay differentials to address circumstances such as class-wide recruitment and retention problems, regionally specific geographic pay disparities, shift differentials for specified work periods, and temporary upgrade programs. In all cases, pay differentials shall address circumstances which apply to reasonably defined groups of employees (i.e. by job class, by participation in a specific program, by regional work location, etc.), not individual employees." In addition to the pay differential recognized by the latter regulation, we addressed the issue of pay differences in *Largent v. West Virginia Div. of Health,* 192 W.Va. 239, 452 S.E.2d 42 (1994).

In *Largent* this Court recognized that, although State employees doing same work had to be placed in same classification, there

could be pay differences within that classification.

The Code establishes a multi-step pay plan and the implementing regulations set forth procedures to assist in determining where on that pay plan an individual employee can be placed. This system allows some flexibility in the hiring process and aids the state in attracting quality people to public service. Moreover, this flexibility allows for fluctuations in market conditions allowing the State to take into consideration other factors when hiring new employees such as the applicant's education and work experience. In short, employees who are doing the same work must be placed within the same classification, but within that classification there may be pay differences if those differences are based on market forces, education, experience, recommendations, qualifications, meritorious service, length of service, availability of funds, or other specifically identifiable criteria that are reasonable and that advance the interests of the employer.

*Largent,* 192 W.Va. at 246, 452 S.E.2d at 49. The appellants contend that *Largent*'s recognition of using different factors to justify paying employees differently for doing the same work, was overruled in part by the decision in *Board of Educ. of The County of Tyler v. White,* 216 W.Va. 242, 605 S.E.2d 814 (2004). We disagree.

In *White* the grievant was an executive secretary for the Tyler County Board of Education (the County). Unlike other executive secretaries with the County who had 261–day contracts, the grievant in *White* was given a 240–day contract, which had fewer benefits. The grievant filed a grievance alleging that she was similarly situated with the other executive secretaries, and therefore the County could not discriminate against her by only offering her a 240–day contract.[9] The administrative grievance Board found that the County had unlawfully discriminated against the grievant. However, on appeal to the circuit court, the decision of the Board was reversed. The circuit court found that

---

**9.** It will be noted that the employment contract discrimination claim brought by the grievant in *White* was under W.Va.Code § 18–29–1 et seq.

In 2007 the legislature repealed the grievance procedure statutes for education employees and replaced them with W.Va.Code § 6C–2–1 et seq.

the County had articulated a legitimate non-discriminatory reason for treating the grievant differently. This Court reversed the trial court's decision and reinstated the Board's decision. In doing so, we overruled prior cases that had authorized government employee discrimination grievances, under W.Va.Code § 6C–2–2(d),[10] be analyzed under the tests used for discrimination claims brought under the West Virginia Human Rights Act.

■ In the instant proceeding, the appellants argue that *White* implicitly overruled *Largent* and therefore prohibited government employers from using retention and recruitment for a specific geographical area as a factor in pay differentials. The appellants misinterpret *White*. All that *White* changed in our law was the use of Human Rights Act discrimination tests in government employee discrimination grievances under W.Va.Code § 6C–2–2(d). We made clear in *White* that "the policy underlying uniformity and discrimination claims under the [public employee] statutes is to prevent discrimination against similarly situated [public] employees regardless of the basis for discrimination. The crux of such claims is that the complainant was treated differently than similarly situated employees, not that the discrimination was motivated by an impermissible factor." *White*, 216 W.Va. at 246, 605 S.E.2d at 818. Thus we find that retention and recruitment for a specific geographical area remain a valid pay differential factor that survived *White*.

■ The appellants have also argued in the alternative that, if this Court finds that retention and recruitment are valid factors, then they presented sufficient evidence to establish that District 1 had similar retention and recruitment problems. It must be noted that this Court has observed that "[a] similarly situated determination is necessarily factual in nature." *Pritt v. West Virginia Div. of Corrections*, 218 W.Va. 739, ·744, 630 S.E.2d 49, 54 (2006).

The relevant evidence submitted by the appellants on the issues of similar retention

and recruitment problems came from Dennis King, a former DOH employee, Gary Stoors, an expert witness, and a report issued by the Rahall Transportation Institute. This evidence was deemed insufficient by the Board and the circuit court. The Board's order succinctly addressed each matter as follows:

Contrary to Grievants' assertions, a similar situation did not exist in District One. Virtually every DOP certification sought for vacancies in District One contained multiple pages of available applicants, and in most cases dozens and dozens more were available. Despite the testimony of Dennis King, a retired Maintenance Engineer for District One, that there was "high turnover" within the TW classifications in 2004 and 2005, the evidence in this case does not prove that insufficient applicants were available or that positions went unfilled due to a lack of interested applicants, as occurred in the panhandle counties.

\* \* \*

Grievants ... presented the testimony of an author of a 2007 report from the Rahall Transportation Institute, which had been requested by DOH's commissioner to study the issue of the aging DOH workforce. The report contained statistics regarding the number of DOH employees who would be eligible to retire in upcoming years, along with information and proposals regarding the replacement of these workers. In the instant case, Grievants contend that the information in the report which discusses the low salaries of DOH workers compared to people employed in the private sector, along with recruitment and retention issues, supports their argument that all DOH districts, specifically District One, have suffered from the same problems as District Five. However, ... the charts in the report which supposedly depict recruitment and retention information for particular areas are unreadable, and the time frame of the report occurred after the 2005 pay differential was implemented. Accordingly, this report and testimony regarding it do not prove Grievants' case of discrimination.

---

**10.** As previously noted in this opinion, we are referencing to W.Va.Code § 6C–2–2(d), even though the applicable law relied upon in *White* was under a different statute.

Similarly, Grievants presented extensive testimony from Gary Stoors, a labor economist employed by AFSCME. Much of Mr. Stoors' testimony focused on the significant number of vacancies which occurred in District One in 2004, as compared to vacancies in District Five. . . .

As the evidence in this case clearly established, conditions vary in the various districts and counties. Moreover, Grievants submitted no conclusive evidence regarding the lack of available applicants for District One positions in 2004, nor evidence that positions remained unfilled due to lack of interest by qualified candidates. . . . Moreover, while Grievants concentrated much of their focus upon the number of vacancies which occurred in their district in 2004, which was undisputedly more than those occurring in the three counties at issue, they have ignored the fact that District One employed many more people in the relevant classifications than District Five. In addition, the number of vacancies in and of itself does not establish a recruitment and retention problem, but perhaps only a retention issue, which is simply insufficient to prove that Grievants are similarly situated to the employees who received the increase.

Mr. Stoors also provided extensive testimony regarding the low salaries of DOH workers in District One as compared to the private sector. . . . While it is obvious that DOH employees, as with so many state workers, are paid lower wages than the private sector offers, this was only one piece of the problems which culminated in the pay differential approved for the Eastern Panhandle. Competing jobs from the private sector was isolated as a cause of the problem that had been identified—an alarmingly low number of applicants interested in DOH employment in that area. . . . Grievants simply have not proven that a similar situation existed in District One.

In this appeal, the appellants have not offered any evidence to show that the circuit court erred in giving deference to the above administrative findings by the board. All that the appellants have done is asked this Court to disregard the well reasoned findings of the Board, and to arbitrarily substitute those findings with the appellants' unsupported contrary assertions. In other words, we simply have not been provided with a basis on which to find that the Board's findings "arbitrary or capricious so as to represent an abuse of discretion." *Blethen v. West Virginia Dept. Of Revenue/State Tax Dept.*, 219 W.Va. 402, 407, 633 S.E.2d 531, 536 (2006).[11]

## IV.

## CONCLUSION

In view of the foregoing, the circuit court's order, affirming the West Virginia Public Employees Grievance Board decision to deny the appellants' grievances, is affirmed.

Affirmed.

DAVIS, J., dissenting:

The appellants in this case, DOH's District 1 employees, made a fundamental argument that they should have been given the increase in wages that their counterparts in District 5 received because they perform the same work. The appellants also argued that the Grievance Board and circuit court erred in finding that they were not similarly situated to the District 5 workers. Nevertheless, the majority's opinion rejects the appellants'

---

11. Insofar as we have determined that the appellants failed to establish that they were discriminated against, the remaining two assignments of error are moot. In addition to being moot, the remaining two issues are without merit. The appellants' contention that the circuit court erroneously found that no District 1 managerial employee complained to DOH about a recruitment and retention problem, is not consistent with the record. Both the Board and circuit court found that testimony by Mr. King regarding reports of retention problems was simply not credible. However, more importantly, even if such complaints had been made, the evidence did not establish, as found by the Board, "that insufficient applicants were available or that positions went unfilled due to lack of interested applicants, as occurred in the Eastern Panhandle counties." Finally, as to the remaining issue of untimeliness of some grievances, our decision nullifies any error in such ruling because even if all grievances were filed timely, they would still be subject to dismissal on the merits.

arguments and affirms the decisions of the lower tribunals. Under the facts of this case, I am compelled to dissent.

"[A] critical component of any discrimination claim is the determination that the person or persons alleging improper discrimination are similarly situated to those allegedly receiving preferential treatment." *Pritt v. West Virginia Div. of Corrs.*, 218 W.Va. 739, 744, 630 S.E.2d 49, 54 (2006). A careful review of the facts in this case clearly establishes that the appellants presented sufficient evidence to show that they were similarly situated with District 5 workers and were, therefore, entitled to be compensated with the wage increase given to District 5 workers. The appellants' expert, Gary Stoors, testified that he used the same criteria relied upon by DOH to demonstrate that District 1 suffered from the same retention and recruitment problems that were found in District 5. In fact, Mr. Stoors's evidence showed that District 1 had an even greater retention and recruitment problem than District 5.

I find unpersuasive the reasons given by the majority of the Court for discrediting Mr. Stoors's findings. The simple-unchallenged fact is that DOH failed to perform a statewide assessment of recruitment and retention problems, and, instead, focused exclusively on District 5. If DOH had performed the statewide evaluation that Mr. Stoors performed, DOH would have realized that the recruitment and retention problem was a *statewide* problem. It is unfortunate that the majority has refused to recognize the legitimate claims of the District 1 workers, and additionally, those workers whose cases remain pending.

For the reasons stated, I respectfully dissent.