# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**ROBERT SCOTT RHODES, II, EVERETTE ALAN CHAPMAN, RICHARD EUGENE HACKER, DEE LEMAN MAYNARD, BOBBY C. PALMER, LONNIE RAY COGAR, JAMES LACY LEWIS, JAMES ALLEN OWENS, JOSEPH JOHN VACCHIO, JR.,**
**Grievants Below, Petitioners**

**FILED**
**December 6, 2024**
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 24-ICA-19**   (Grievance Bd. Case No. 2022-0913-CONS)

**OFFICE OF THE STATE FIRE MARSHAL, WEST VIRGINIA FIRE COMMISSION,**
**Respondent Below, Respondent**

**and**

**WEST VIRGINIA DIVISION OF PERSONNEL,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioners appeal the December 13, 2023, Decision from the West Virginia Public Employees Grievance Board ("Grievance Board"). Respondents Office of the State Fire Marshal, West Virginia Fire Commission ("Respondent Commission"), and West Virginia Division of Personnel ("Respondent DOP"), filed a joint response.[1] Petitioners filed a reply. On appeal, Petitioners challenge the Grievance Board's denial of their grievances related to Respondents' implementation of special hiring rates to recruit assistant fire marshals with law enforcement certifications to fill related job vacancies within the agency.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Grievance Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1] Petitioners are represented by Karen H. Miller, Esq., Joseph L. Amos, Jr., Esq., and Robert A. Hogue, Esq. Respondent Commission is represented by Patrick Morrisey, Esq., and Jodi B. Tyler, Esq. Respondent DOP is represented by Patrick Morrisey, Esq., and Katherine A. Campbell, Esq.

Petitioners are employed by Respondent Commission as assistant fire marshals. During their employment, the Legislature enacted West Virginia Code § 15A-10-1 (2020), which transferred the Office of the State Fire Marshal to the Department of Homeland Security. Of import here is West Virginia Code § 15A-10-1(g), which states:

> Any individual who is employed by the State Fire Marshal to conduct criminal investigations or who may become actively involved in matters of a criminal nature shall first be required to pass a civil service examination testing his or her competency and proficiency in the law of arrest, search and seizure, and other criminal procedures relating to the powers granted to the State Fire Marshal pursuant to the provisions of this article: *Provided,* That all new hires to sworn positions of Fire Marshal 1, 2, or 3 and deputy fire marshal, excluding the chief deputy as described in subdivision (f) of this section, shall comply with the law enforcement certification requirements set forth in § 30-29-1 *et seq.*

Petitioners are not certified law enforcement officers but were exempted from this requirement due to their employment predating the effective date of the statute.

Following the enactment of West Virginia Code § 15A-10-1, Respondent Commission began having difficulty with the retention and recruitment of assistant fire marshals with law enforcement certifications. In response, on April 28, 2022, the West Virginia State Personnel Board ("Personnel Board") approved Personnel Board Proposal 3004 ("Proposal 3004"), which implemented special hiring rates for the assistant fire marshal positions. As justification for the special hiring rates, Proposal 3004 set forth the following rationale and proposed hiring rates:

> The Office of the State Fire Marshal is having recruitment and retention issues for the Assistant Fire Marshal in Training classification. This classification has been posted four (4) times with 430 applicants referred in total with no suitable candidates found. To address recruitment and retention issues and to prevent salary compression of the higher levels of the Assistant Fire Marshal series, the Office of the State Fire Marshall is requesting to implement special hiring rates for the Assistant Fire Marshal in Training, Assistant Fire Marshal 1, Assistant Fire Marshal 2, Assistant Fire Marshal 3, and Field Deputy Fire Marshal classifications. The special hiring rates originally proposed by the Office of the State Fire Marshal were modified to adhere to the parameters of the wvOasis system. The current salary range and the modified, proposed hiring rates are as follows:

| Classification | Current Salary Range | Proposed Hiring Rate |
|---|---|---|
| Assistant State Fire Marshal in Training | $29,396-$54,382 | $34,398 (non-certified) $39,416 (certified) |

| | | |
|---|---|---|
| Assistant Fire Marshal 1 | $31,146-$57,620 | $37,752 (non-certified) $42,770 (certified) |
| Assistant Fire Marshal 2 | $32,722-$60,535 | $39,182 (non-certified) $44,174 (certified) |
| Assistant Fire Marshal 3 | $34,688-$64,172 | $41,418 (non-certified) $46,410 (certified) |
| Field Deputy Fire Marshal | $36,779-$68,041 | $45,058 (non-certified) $50,050 (certified) |

Upon obtaining certified status, incumbents hired as non-certified in the Assistant State Fire Marshal in Training, Assistant Fire Marshal 1, Assistant Fire Marshal 2, Assistant Fire Marshal 3, and the Field Deputy Fire Marshal classifications will have their salaries brought up to the certified special hiring rates of $39,416, $42,770, $44,174, and $50,050, respectively.

Proposal 3004 became effective on May 21, 2022. According to the record, Petitioners declined to seek law enforcement certifications because it would have required completion of the West Virginia State Police Academy's sixteen-week program, which contains physical agility and residential living requirements.

Between June 16, 2022, and June 28, 2022, Petitioners began filing separate grievances against the Commission challenging the implementation of Proposal 3004 and arguing that it constituted discrimination in violation of West Virginia Code § 6C-2-2(d) (2023) ("any differences in the treatment of similarly situated employees unless the differences are related to the actual job responsibilities of the employees or are agreed to in writing by the employees") and favoritism in violation of West Virginia Code §§ 6C-2-2(h) (2023)[2] ("unfair treatment of an employee as demonstrated by preferential, exceptional, or advantageous treatment of a similarly situated employee unless the treatment is related to the actual job responsibilities of the employee or is agreed to in writing by the employee"). Petitioners further argued that Proposal 3004 bifurcated the salary structure for each of the assistant fire marshal classifications on criteria other than actual job responsibilities in violation of Respondent DOP's legislative rules and written policy. In other words, Petitioners argued that as tenured employees, they are paid less or the same salary as new hires. Notably, in July of 2022 the Personnel Board approved Personnel Board Proposal 3025 ("Proposal 3025"), which provided up to $4,000.00 in additional compensation for existing non-certified fire marshals, effective August 13, 2022.

---

[2] We acknowledge that prior versions of these statutes were in effect at the time Petitioners' grievances arose; however, we cite to current version of the statute, noting that the relevant statutory language was not changed by the amendment.

Respondent DOP was joined as a party on July 14, 2022. On July 22, 2022, the Grievance Board consolidated the grievances, holding a level three administrative hearing on August 14-15, 2023. By Decision dated December 13, 2023, the Grievance Board denied the grievances.

In its Decision, the Grievance Board determined that the salary adjustments implemented under Proposal 3004 constituted a pay differential as defined and authorized by Respondent DOP's legislative rules. W. Va. Code R. § 143-1-3.60 (2022) (defining a pay differential as: "A type of salary adjustment specifically approved by the [Personnel] Board to address circumstances including, but not limited to, class-wide recruitment and/or retention problems, regionally specific geographic pay disparities, apprenticeship program requirements, shift differentials for specified work periods, and temporary upgrade programs."); W. Va. Code R. § 143-1-5.4.f.4 (2022) (stating that in accordance with West Virginia Code § 29-6-10(2) (1999),[3] "[t]he [Personnel] Board may approve the establishment of pay differentials to address circumstances which apply to reasonably defined groups of employees.").[4] *see also* W. Va. Code § 29-6-10 (1999) (granting the Personnel Board authority to promulgate, amend, or repeal legislative rules under chapter 29). The Decision also cited the recruitment and incentive language of Respondent DOP's Pay Plan Policy, which states:

> An appointing authority may recommend an in-range salary adjustment to all employees in a job classification, within the agency-defined organizational work unit, for which documented salary non-competitiveness has been established. The appointing authority shall provide documentation to

---

[3] West Virginia Code § 29-6-10 (1999) grants the Personnel Board authority to promulgate, amend, or repeal its legislative rules to implement the provisions of chapter 29. Relevant here is West Virginia Code § 29-6-10(2), which provides:

> For a pay plan for all employees in the classified service, after consultation with appointing authorities and the state fiscal officers, and after a public hearing held by the board. Such pay plan shall become effective only after it has been approved by the Governor after submission to him by the board. Amendments to the pay plan may be made in the same manner. Each employee shall be paid at one of the rates set forth in the pay plan for the class of position in which he is employed. The principle of equal pay for equal work in the several agencies of the state government shall be followed in the pay plan as established hereby.

[4] We acknowledge that prior versions of several of the legislative rules cited throughout this decision were in effect at the time Petitioners' grievances arose. However, in this decision we cite to current versions where the relevant language has not changed.

4

include, but not be limited to, turnover rates for the last twelve (12) months, reasons for separation from employment, the number of filled and vacant positions in the job classification, any recruitment initiatives, the number of internal applicants and eligibles on the register(s) and contact results for the most recent vacancy, and tenure in class for the employees in the job classification. This request must be presented to and approved by the [Personnel] Board.

On this issue, the Grievance Board found that Respondent Commission complied with Respondent DOP's legislative rules and Pay Plan Policy in its development and implementation of Proposal 3004. It found that the special hiring rate was based upon documented salary non-competitiveness for certified assistant fire marshals and given the onerous requirements of the State Police Academy's program, it was reasonable to increase the hiring rate for certified assistant fire marshals to attract candidates.

The Grievance Board rejected Petitioners' argument that Proposal 3004 went against the legislative intent of West Virginia Code § 15A-10-1 to exclude existing assistant fire marshals from the law enforcement certification requirement. On this issue, it was determined that the legislation did not address compensation and Respondent Commission had not attempted to require existing fire marshals to obtain law enforcement certification as a condition of continued employment. Thus, the special hiring rate did not violate the statute's legislative intent. Instead, the Grievance Board concluded that the special hiring rate embodied the intent of the statute which was to address the recruitment issues for existing assistant fire marshal vacancies that Respondent Commission had been unable to fill under the former pay rates.

Next, the Grievance Board found that because Petitioners were assistant fire marshals who did not hold law enforcement certifications, they could not prove their salary-related claims of discrimination or favoritism because they were not similarly situated to those assistant fire marshals who were certified. The Grievance Board found this conclusion to be consistent with its prior decisions, as well as those of our Supreme Court of Appeals, which established that employees performing similar work were not required to receive identical pay, so long as they are paid in accordance with the pay scale for their employment classification. For example, the Grievance Board's Decision highlighted *Largent v. West Virginia Division of Health*, wherein it was noted that the language of West Virginia Code § 29-6-10(2) and Respondent DOP's legislative rules recognize that workers within a classification may be paid different salaries, explaining:

The [West Virginia] Code establishes a multi-step pay plan and the implementing regulations set forth procedures to assist in determining where on that pay plan an individual employee can be placed. This system allows some flexibility in the hiring process and aids the state in attracting quality people to public service. Moreover, this flexibility allows for fluctuations in

5

market conditions allowing the State to take into consideration other factors when hiring new employees such as the applicant's education and work experience. In short, employees who are doing the same work must be placed within the same classification, but within that classification there may be pay differences if those differences are based on market forces, education, experience, recommendations, qualifications, meritorious service, length of service, availability of funds, or other specifically identifiable criteria that are reasonable and that advance the interests of the employer.

*Largent v. W. Va. Div. of Health*, 192 W. Va. 239, 246, 452 S.E.2d 42, 49 (1994).

After finding that assistant fire marshal pay was differentiated based upon the law enforcement certification requirements mandated by the new statute, the Grievance Board concluded that the pay differences created by Proposal 3004 were reasonable and consistent with reasoning in *Largent*. It further concluded that Petitioners were all paid within the salary range for the pay grade assigned to their positions, and that there was no difference in the job duties they performed versus those of certified assistant fire marshals. As such, the Grievance Board held that the actions of Respondent Commission and Respondent DOP regarding the implementation of Proposal 3004 were not arbitrary and capricious. This appeal followed.

In this appeal, our governing standard of review for a contested case from the West Virginia Public Employees Grievance Board is as follows:

A party may appeal the decision of the administrative law judge on the grounds that the decision:
(1) Is contrary to law or a lawfully adopted rule or written policy of the employer;
(2) Exceeds the administrative law judge's authority;
(3) Is the result of fraud or deceit;
(4) Is clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or
(5) Is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

W. Va. Code § 6C-2-5(b) (2007);[5] *accord* W. Va. Code § 29A-5-4(g) (2021) (specifying the standard for appellate review of administrative appeal). Likewise, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which

_____

[5] West Virginia Code § 6C-2-5 was recently amended, effective March 1, 2024. However, the former version of the statute was in effect at the time the Board's decision was entered and applies to this case.

presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996); *see also,* Syl. Pt. 1, in part, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996) (on appeal, a court may not overturn a finding simply because it would have decided case differently); Syl. Pt. 1, *Francis O. Day Co., Inc. v. Dir., Div. of Env't Prot.*, 191 W. Va. 134, 443 S.E.2d 602 (1994) (evidentiary findings should not be reversed unless clearly wrong).

There are two assignments of error for our consideration on appeal.[6] First, Petitioners contend that the Grievance Board erred in its application of *Largent*, West Virginia Code, and Respondent DOP's legislative rules by concluding that they had failed to prove their claims of discrimination or favoritism because they were not similarly situated to assistant fire marshals with law enforcement certification. In support, Petitioners argue that the law enforcement certification requirement under West Virginia Code § 15A-10-1(g) is simply a new minimum qualification requirement for the affected fire marshal positions and is identified as such in the relevant job descriptions. For this reason, Petitioners maintain that they and their certified counterparts are similarly situated because once employed, both groups are performing the same job. Further, Proposal 3004 improperly relies upon law enforcement certification as the basis for the special hiring rates in that the certification requirement was mandated by the Legislature, and as such cannot be considered related to the job functions of an assistant fire marshal. We are not persuaded by this argument.

Central to Petitioners' discrimination and favoritism claims is the requirement of disparate treatment between similarly situated employees. As our Supreme Court of Appeals has observed, "a critical component of any discrimination claim is the determination that the person or persons alleging improper discrimination are similarly situated to those allegedly receiving preferential treatment" and "[a] similarly situated determination is necessarily factual in nature." *Pritt v. W. Va. Div. of Corr.*, 218 W. Va. 739, 744, 630 S.E.2d 49, 54 (2006). Here, the Grievance Board, sitting as the trier of fact, found that Petitioners failed to show that they were similarly situated to newly hired assistant fire marshals who, as a statutory requirement for employment, held law enforcement certification. The Grievance Board also determined that Respondent Commission complied with Respondent DOP's legislative rules and Pay Policy in its development and implementation of Proposal 3004.

---

[6] Petitioners also raise a third assignment of error, arguing that the Grievance Board erred in its determination that Respondent DOP's Pay Plan Policy did not permit retroactive wages. However, Petitioners' brief acknowledges that this issue was not addressed by the Grievance Board's Decision, and that the argument was only being raised out of an abundance of caution should the Decision be reversed on appeal. Because we are affirming the Grievance Board's ruling, this assignment of error will not be addressed.

The record indicates that Proposal 3004 was adopted after Respondent Commission experienced difficulty in filling vacant fire marshal positions after a law enforcement certification became a mandatory requirement pursuant to statute. Petitioners were eligible for the increased salaries upon completion of the law enforcement certification program but chose not to obtain the certification. Indeed, Petitioners acknowledge that they subsequently received increased compensation when Proposal 3025 was approved by the Personnel Board. More importantly, the Grievance Board determined that Proposal 3004's implementation of a special hiring rate was consistent with *Largent* and the applicable provisions of West Virginia Code and Respondent DOP's legislative rules. Following our review of the record in this case, we find the Grievance Board's determination on this issue to be rational and supported by the substantial evidence. As such, we decline to disturb the Grievance Board's ruling.

Petitioners also assign error to the Grievance Board's conclusion that the implementation of Proposal 3004 was not arbitrary and capricious. It is contended that the Proposal created a new pay plan by distinguishing between certified and non-certified employees and in doing so, failed to ensure that Petitioners received compensation equal to that of those assistant fire marshals with law enforcement certification in violation of West Virginia Code of State Rules § 143-1-5.4.f.1.A (2022) ("Upon adoption of a new pay plan the Board shall require and may approve or modify a plan of implementation which ensures incumbents in the classified service receive equal treatment based on sound compensation practices.") and West Virginia Code of State Rules § 143-1-5.4.f.1.B (2022) ("An incumbent whose salary falls below the minimum rate of the new compensation range shall have his or her salary adjusted to the new minimum."). Petitioners acknowledge that they received a pay increase under Proposal 3025, but they maintain that the increase was inequitable when compared to the hiring rates approved for certified assistant fire marshals under Proposal 3004. We find no merit in this argument.

As the Grievance Board observed, West Virginia Code § 15A-10-1(g) does not address compensation. Further, pursuant to its interpretation of Respondent DOP's Pay Plan Policy, the controlling statutes, and legislative rules, the Grievance Board determined that Proposal 3004 was not a new pay plan, but instead, it was a pay differential which was reasonably implemented as part of a recruitment and retention incentive to assist Respondent Commission's hiring efforts. After review of the record, we conclude that the implementation of Proposal 3004 was not arbitrary and capricious, nor an abuse of discretion.

Accordingly, we affirm.

Affirmed.

**ISSUED:** December 6, 2024

8

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear